526 A.2d 369

**COMMONWEALTH of Pennsylvania**

v.

**Jessie Bell GROVE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1986.

Filed May 18, 1987.

330

John R. Merrick, Public Defender, Murray K. Smith, Assistant Public Defender, West Chester, for appellant.

Thomas J. Wagner, Assistant District Attorney, Phoenixville, for Com., appellee.

Before CIRILLO, President Judge, and MONTEMURO and KELLY, JJ.

KELLY, Judge:

At approximately 11:00 p.m. on Thursday, October 8, 1981, appellant, Jessie Bell Grove, entered the master bedroom of her home where her husband, Israel Grove, lay drunk and asleep. Appellant removed approximately four hundred dollars from his trouser pocket and then shot her husband in the back with a twelve gauge shotgun. She then tied his legs together, poured gasoline about his body and ignited it. The fire charred Israel Grove's remains, and destroyed the family residence. Appellant's daughter, Diane Denise Grove, assisted her mother in the commission of these acts. The next day, appellant went to Lukens Steel Company, her husband's employer, and asked about receiving his back pay, vacation pay, and insurance benefits. During her initial contacts with the police, she lied about her activities on the night of her husband's death. However, appellant eventually confessed to the murder in a sworn statement to the Pennsylvania State Police.

On October 4, 1982, following a jury trial, appellant was found guilty of first-degree murder and conspiracy. She was acquitted of a charge of arson. Post-verdict motions raising fifty-seven allegations of error were filed and denied. On September 24, 1984, appellant was sentenced to life imprisonment on her first-degree murder conviction and a consecutive sentence of five to ten years imprisonment on the conspiracy conviction. A timely notice of appeal was

filed. Appellant's motion for reconsideration of sentence was filed, argued and denied.

On appeal, appellant contends that: the trial court improperly prevented appellant from presenting her self-defense claim; the trial court erred in failing to suppress appellant's statements to the police; the jury charge was unclear, inadequate, and inaccurate; the trial court abused its discretion with regard to adverse rulings made throughout appellant's trial; and the sentence imposed on the conspiracy charge was excessive and illegal. Upon review of the voluminous record, the briefs of the parties, the relevant caselaw, and the thorough and well-reasoned opinion by the Honorable John E. Stively, Jr., we find no merit in this appeal, and accordingly affirm judgment of sentence.

## I.

Appellant's theory of self-defense was that she actually and reasonably believed that deadly force was necessary to protect herself and her daughter from death or serious bodily injury. She based her claim upon her allegation that throughout her twenty-two year marriage, she and her children were physically abused by the victim, Israel Grove, her husband. Appellant contended that her perception of danger on the day of this incident was directly affected by the cumulative impact of years of abuse. On appeal, appellant contends that the trial court erroneously excluded evidence of specific violent acts of the victim as well as evidence of his general reputation for violence. Appellant argues that this evidence was essential to establish both the sincerity and reasonableness of appellant's fear of death or serious bodily injury. (Appellant's Brief at 8). We cannot agree.

"The trial judges of this Commonwealth exercise broad powers while presiding at the trial of cases assigned to them. These powers include ruling on the admission or exclusion of evidence and controlling the scope of examination and cross-examination of witnesses. Such matters are committed to the sound discretion of the trial judge." *Com-*

monwealth v. Pittman, 320 Pa.Super. 166, 172–173, 466 A.2d 1370, 1373 (1983) (citation omitted). Decisions regarding such matters will not be reversed on appeal absent a clear abuse of discretion. Commonwealth v. Sisco, 484 Pa. 85, 398 A.2d 955 (1979); Commonwealth v. Jackson, 336 Pa.Super. 609, 486 A.2d 431 (1984).

The trial court held that while there was a possible basis for a self-defense claim, the excluded evidence was, nonetheless, inadmissible under the two-prong relevancy test announced in Commonwealth v. Amos, 445 Pa. 297, 284 A.2d 748 (1971). The court reasoned that because appellant admitted that the victim was asleep, no evidence of the victim's violent propensities (acts or reputation) could be admitted to establish that the victim was the aggressor. The court further reasoned that evidence of the victim's violent propensities (acts or reputation) would only be admissible to establish the reasonableness of appellant's perception of an actual threat if she knew of the acts or the reputation at the time she used the deadly force. Applying this reasoning to the appellant's various proffers, the Court concluded that some but not all of appellant's evidence was admissible; the remainder was excluded because appellant failed to establish a proper foundation for its admission. See Trial Court Opinion at 13–19. While we agree with the trial court's analysis and application of the rule in Commonwealth v. Amos, supra, we do not find such analysis necessary. Instead, we would find that the evidence was properly excludable because self-defense was not properly at issue in this case.[1]

In Commonwealth v. Brown, 491 Pa. 507, 421 A.2d 660 (1980), the Pennsylvania Supreme Court stated:

'While there is no burden on the defendant to prove a claim of self-defense, it is nevertheless required that before such a defense is properly in issue at trial, there

1. We note, additionally, that appellant's complaints regarding the trial court's treatment of the self-defense issue permeate several of the other issues raised on appeal, and would otherwise require full treatment of this issue infra. (See, infra at n. 10).

must be some evidence, from whatever source, to justify such a finding.'

491 Pa. at 512, 421 A.2d at 662. (Citations omitted) (emphasis omitted and added).

In *Commonwealth v. Simmons,* 504 Pa. 565, 475 A.2d 1310 (1984), our Supreme Court stated:

Pursuant to 18 Pa.C.S. § 505(a):

The use of force upon or toward another person is justifiable when the actor believes that such force is *immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.*

Additionally a claim of self-defense is further proscribed by the following conditions:

(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing;

(2) The slayer must have reasonably believed that he was in *imminent danger* of death or great bodily harm, and that there was a necessity to kill in order to save himself therefrom;

(3) The slayer must not have violated any duty to retreat or avoid the danger.

504 Pa. at 569, 475 A.2d at 1312–13. (Citing cases) (emphasis added).

We find that self-defense was not properly at issue because there was no evidence presented to establish that appellant reasonably believed that she or any other person was in imminent danger of death or serious bodily injury on the present occasion when the deadly force was used. In reaching this conclusion we are mindful of the unique questions and considerations which arise in cases involving intra-familial, and especially intra-spousal, violence or abuse. In the context of a claim of self-defense by a battered spouse, our Supreme Court has explained:

A woman whose husband has repeatedly subjected her to physical abuse does not, by choosing to maintain her family relationship with that husband and their children,

consent to or assume the risk of further abuse. That woman faces a difficult choice: she must decide whether to endure continued abuse, or whether to leave her home or otherwise terminate her family relationship in order to avoid further mistreatment. Not surprisingly, some of those women who have "decided" to suffer years of abuse suddenly reach the "breaking point" and react violently.

In a case such as this, in which there has been physical abuse over a long period of time, the circumstances which assist the court in determining the reasonableness of a defendant's fear of death or serious injury at the time of a killing include the defendant's familiarity with the victim's behavior in the past. *See* A. Eisenberg & E. Seymour, *The Self Defense Plea and Battered Women*, 14 Trial Nos. 7, 34, 41 (1978) ("If she had knowledge, at the time, of prior specific acts of violence by the victim ..., that knowledge had to work on her mind, causing greater fear than if she had lacked such knowledge."); Comment, 6 Pepperdine L.Rev. 213, 223 (1978) ("[T]here is no reason why a finding of self-defense should not consider the mental state of a reasonable person who has suffered repeated previous beatings at the hands of the victim."). Further, in determining the reasonableness of a defendant's belief, we must also take into account any changes in her husband's behavior towards her immediately before the killing.

*Commonwealth v. Watson*, 494 Pa. 467, 472–73, 431 A.2d 949, 951–52 (1981); *Commonwealth v. Zenyuh*, 307 Pa.Super. 253, 257–58, 453 A.2d 338, 340 (1982); *cf. Commonwealth v. Eberle*, 474 Pa. 548, 555–56, 379 A.2d 90, 95 (1977) (self-defense claim of woman who was attacked by drunken boyfriend).

In *Watson* and *Zenyuh*, battered wives used deadly force when their unarmed husbands attacked them. In both cases, a history of abuse, coupled with a contemporaneous increase in their husbands' threats and use of violence, was relevant evidence in determining whether the defendant-wives reasonably believed that they were in imminent dan-

ger of *death or serious bodily injury* on the present occasion. In *Watson*, the defendant "shot her husband *only after he had placed his hands around her neck,* ...." 494 Pa. at 474, 431 A.2d at 952. (Emphasis added). In *Zenyuh*, the defendant stabbed her husband with the kitchen knife that she grabbed to defend herself *after he had just beaten her,* while he was still in a rage, *and as he was coming at her again.* 307 Pa.Superior Ct. at 256–257, 453 A.2d at 339–340.

Distinguished Justice Oliver Wendell Holmes, Jr., reasoned that, "the law does not require detached reflection in the presence of an upraised knife." *Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921). In *Watson* and *Zenyuh*, Pennsylvania courts recognized that battered wives, viewing the facts through a filter of fear caused by past beatings, might reasonably perceive the approach of their *threatening but unarmed* husbands in the same way that another person would view the approach of a stranger with an upraised knife.

■ However, reliance upon *Watson* and *Zenyuh* by the appellant in the instant case is misplaced. Unlike the battered wives literally under seige in *Watson* and *Zenyuh*, the appellant in the instant case offered no evidence whatsoever to establish that she or any other person was in imminent danger of death or serious bodily injury on the present occasion when the deadly force was used. The victim was not threatening in any manner; rather, it is undisputed that he was drunk and asleep. While a history of spousal abuse is certainly a factor to be considered in determining whether an accused's alleged fear of imminent death or serious bodily injury is genuine and reasonable, it does not alter the requirement that the threat of death or serious bodily injury be imminent on the present occasion. Assuming that appellant was genuinely and reasonably afraid of her husband, the fact remains that whatever danger he presented was not *imminent on the present occasion* as he lay sleeping.

■ Appellant attempts to cloud this issue with a semantical smokescreen regarding alleged differences between

the time frames encompassed by the terms "immediate" and "imminent," as used in the self-defense statute (immediate), and the caselaw (imminent). Appellant contends that there is a conflict between the caselaw and the language of the statute in that the statutory phrase "immediately necessary ... on the present occasion" was intended to be an expansion of the caselaw term "imminent." Appellant cites Model Penal Code § 3.04, Comment 2(c)[2] in support of this argument and concludes:

> Thus, 'plain meaning' of the language to the contrary, the Crimes Code drafters intended to provide a defendant with *greater 'latitude'* than the term 'imminent' implies.

(Appellant's Brief at 23). (Emphasis supplied). Succinctly stated, appellant contends that the statutory limit on the right of self-defense ("immediately necessary on the present occasion") is longer than the caselaw standard ("imminent") and that the court erred by instructing the jury in accordance with the more restrictive caselaw standard.

In *Commonwealth v. Alvin,* 357 Pa.Super. 509, 516 A.2d 376 (1986), an undivided *en banc* panel of this Court stated:

2. Model Penal Code § 3.04, comment 2(c) provides:
*Nor* does the draft limit the privilege of using defensive force to cases where the danger of unlawful violence is *'imminent'*, as many formulations of the rule now do. The actor must believe that his defensive action is immediately necessary and the unlawful force against which he defends must be force that he apprehends will be used on the present occasion, but he need not apprehend that it will be *immediately used.* There would, for example, *be a privilege to use defensive force to prevent an assailant from going to summon reinforcements,* given belief and reason to believe that it is necessary to disable him to *prevent an attack by overwhelming numbers* —so long as the attack is apprehended on the 'present occasion'. The latter words are used in preference to 'imminent' or 'immediate' to introduce the *necessary latitude* for the attainment of a just result in cases of this kind.
(Appellant's emphasis). Appellant argues that "[u]nder this theory, the jury could have found the defendant justified in killing her husband before he could attack her or her daughter with overwhelming odds (M.P.C. § 3.04), *or* they could have found that her assessment of the situation was *bona fide,* but her reaction was unreasonable. Therefore, finding her guilty only of voluntary manslaughter. [sic]" (Appellant's Brief at 23).

The legislative history is devoid of any reference to a legislative intent to adopt the radical change in the law of self-defense which the appellant contends that the enactment of 18 Pa.C.S.A. § 505(b)(2)(i) accomplished. We note that while the legislature appears to have borrowed language from § 3.04 of the Model Code, the statute does not follow the Model Code *verbatim,* nor did the legislature adopt or even discuss the Comments to the Model Code upon which the appellant so heavily relies.

Our Supreme Court has consistently stated that, '[f]or the most part, section 505 of the Code merely codifies the common law of this Commonwealth.' *Commonwealth v. Cropper,* 463 Pa. 529, 534, 345 A.2d 645, 647 (1975); *see also [Commonwealth v. Black,* 474 Pa. 47, 53 n. 3, 376 A.2d 627, 630 n. 3 (1977); *Commonwealth v. Walley,* 466 Pa. 363, 367 n. 3, 353 A.2d 396, 398 n. 3 (1976); *Commonwealth v. Light,* 458 Pa. 328, 334 n. 4, 326 A.2d 288, 292 n. 4 (1974); *Commonwealth v. Jones,* 231 Pa.Super. 300, 304 n. 4, 332 A.2d 464, 466 n. 4 (1974)]. The Official Comment to 18 Pa.C.S.A. § 505 provides in pertinent part:

This section is derived from Section 3.04 of the Model Penal Code, and makes no substantial change in existing law. *The intent of this section is to codify existing case law pertaining to 'self-defense' and to cover in a single rule the law governing the use of defensive force against both attack and in crime prevention.*

*Reprinted at* 18 Pa.C.S.A. § 505, at 23 (Purdon's Supp. 1986). We note that where the Code provisions clarified, liberalized or changed the existing law, the Official Comment to those provisions unequivocally announced such intent.[3]

Consequently, we reject the appellant's argument that, while for the most part the law was not changed, the statute did alter the law of self-defense such that the instruction given by the trial court constituted reversible error.

___

[3] *See, for example,* the Official Comments to 18 Pa.C.S.A. § 110 (This section *modifies* present law ...); § 305 (Subsection (b): There

is no similar provision in existing law. The purpose is to *'tone down'* absolute or strict liability in penal law as a whole.); § 306 (Subsection (g); This subsection *changes* existing law ...); § 309 (Subsection (a); § 504 (This section is intended to *define more precisely* ...); § 901 (The purpose of this ... section is to *change* existing case law ...); § 907 (This section *broadens* existing law ...); § 908 (This section *broadens and consolidates* the various existing provisions). The Official Comments are reprinted following the Code sections to which they apply in 18 Pa.C.S.A. §§ 101–908 (Purdon's Supp.1986).

357 Pa.Superior Ct. at 521–522 & n. 3, 516 A.2d at 383 & n. 3. (Emphasis supplied). The same reasoning applies to appellant's claim in the instant case. To the extent that Model Penal Code comments are inconsistent with the caselaw regarding self-defense as it existed in 1972 (when 18 Pa.C.S.A. § 505 was adopted), the caselaw and not the Model Penal Code comment controls as to the construction of the statute.[3]

■ Moreover, appellant testified that *the threat* to kill her or her daughter, Sissy, *was contingent* upon Sissy's return to the house the next day. (N.T. 10/14/82 at 1449–50, 1465, 1470 & 1479–80). As a matter of law, any imminence to appellant's perceived risk of death or serious bodily injury ended, as did the conflict on the "present occasion," when the victim went to bed and fell asleep.[4] Because her sleeping husband presented neither an *immediate* nor an *imminent* threat of death or serious bodily injury *on the present occasion* when the deadly force was used, self-defense was not properly at issue in the instant case.[5]

3. With respect to appellant's contention that the Model Penal Code comment indicates an intent to provide greater latitude despite the "'plain meaning' of the language to the contrary," *supra*, we note that 1 Pa.C.S.A. § 1939 provides in pertinent part, "... the text of the statute shall control in the event of a conflict between its text and such comment or report." *See also* 1 Pa.C.S.A. §§ 1903, 1921(b), 1922(b).

4. Appellant apparently overlooks the fact that even the Model Penal Code comment requires that attack be "apprehended on the 'present occasion.'" (*Supra,* at note 2).

5. *Cf. Commonwealth v. Reiff,* 489 Pa. 12, 413 A.2d 672 (1980) (appellant failed to show that wife's paramour was armed or otherwise presented an imminent threat of death or serious bodily injury); *Commonwealth v. Black, supra,* 474 Pa. at 54, 376 A.2d at 630–31 ("the victim had not reached a position relative to where appellant was standing to have posed an immediate threat...."); *Commonwealth v.*

## II.

■ Appellant next contends that the trial court erred in failing to suppress all oral and written statements made by appellant to the police during their investigation. Appellant argues that she was subjected to three unconstitutional custodial interrogations on October 9, 1981 and October 10, 1981. Appellant further contends that later statements, made after receiving full *Miranda* [6] warnings and signing a waiver form, were tainted by the illegality of the earlier interrogations. We cannot agree.

The scope of our review of the suppression court's decision is well-settled:

> When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985) (citing cases).

The trial court found that the defendant was not taken into custody or otherwise deprived of her freedom in any significant way during the interviews on October 9, 1981 and October 10, 1981. (N.T. 10/8/82 at 576). The trial court also found that on October 14, 1981, appellant was given full *Miranda* warnings and that she knowingly and intelligently waived her rights before giving oral and written statements. (N.T. 10/8/82 at 577).

*Walley, supra* (pursuit and use of deadly force after repelling attack was not privileged); *Commonwealth v. Daniels,* 451 Pa. 163, 301 A.2d 841 (1973) (same); *Commonwealth v. Cropper, supra,* 463 Pa. at 538, 345 A.2d at 650 ("even if appellant's testimony as to his fear was believed, it was a fear not justified by the immediate circumstances.").

6. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Upon review of the voluminous record of the suppression hearing (N.T. 8/6/82 at 261–461; N.T. 8/7/82 at 464–566; N.T. 8/8/82 at 574–578), the briefs of counsel, and the opinion of the trial court, we find that the trial court's findings are supported by sufficient credible evidence [7] and that the trial court made no errors of law in denying the motions to suppress. We note with approval the trial court's reliance upon *Commonwealth v. Anderson,* 253 Pa.Super. 334, 385 A.2d 365 (1978). Appellant's second contention is without merit.

### III.

Appellant next contends that the charge to the jury was unclear, inadequate and incomplete. Appellant argues that the trial court abused its discretion by: *sua sponte* charging the jury on the Slayer's Act; [8] by failing to instruct the jury regarding their mercy dispensing powers; by giving a confusing charge on voluntary manslaughter; by giving an incomplete charge on the defense of diminished capacity; and by giving inaccurate instructions on the law of justification. We cannot agree.

In *Commonwealth v. Alvin, supra,* this Court summarized the law regarding alleged errors in instructing the jury as follows:

> In reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole; error cannot be predicated on isolated excerpts, and it is the general effect of the charge that controls. *Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978). Moreover, there is no right to have any particular

---

7. We note generally that: appellant's presence was requested rather than compelled; each of the interviews was conducted in a hotel room (not a police station or squad car); officers were not in uniform and displayed no weapons; the interviews were brief, the first lasted two minutes, the other two lasted ten minutes each; the first interview was conducted in front of family and friends; during the second interview appellant was accompanied by a friend; and, appellant was not placed under arrest and was permitted to leave after the first and second interviews.

8. 20 Pa.C.S.A. § 8801 *et seq.*

form of instruction given; it is enough that the charge clearly and accurately explains the relevant law. *Commonwealth v. Dozier*, 294 Pa.Super. 249, 439 A.2d 1185 (1982). Where the charge given properly covers the requested point, it is not error for the trial court to refuse to give additional instructions. *Commonwealth v. Hayes*, 314 Pa.Super. 112, 460 A.2d 791 (1983).

357 Pa.Superior Ct. at 518–519, 516 A.2d at 381.

■ Appellant's argument that the trial court abused its discretion in *sua sponte* issuing a charge as to the Slayer's Act is without merit. The jury, in writing, requested the trial court to tell them whether a corpse was a person, and to define arson. (N.T. 10/23/82 at 2864). After protracted discussion with counsel, and after giving counsel an opportunity to research the issue, the trial judge determined that in answering the jury's questions fully he would have to supplement his original charge with an explanation of the Slayer's Act, and how it would affect the jury's factual determination of whether the Grove family residence could be considered a building or occupied structure of another. (N.T. 10/23/82 at 2881–91). After completing his supplemental instructions, the trial judge entertained argument from appellant's counsel and then clarified his supplemental instructions with respect to the defenses of justification and insanity. (N.T. 10/23/82 at 2892–95). We find no error of law or abuse of discretion in either the decision to give the supplemental instructions or in the instructions themselves. We note that appellant was acquitted upon the charge to which the instructions applied. We note also that appellant's argument that the instructions upon this issue may have confused the jury with regard to unrelated issues is without basis. A fair reading of the instructions as a whole reveals no such potential for confusion or prejudice.

■ Appellant next argues that the trial court abused its discretion in failing to instruct the jury concerning its inherent mercy dispensing powers. At the time of appellant's trial, Pennsylvania appellate decisions held that, "a defendant under indictment of murder will be entitled,

*upon request,* to have the jury advised of its power to return a verdict of voluntary manslaughter." *Commonwealth v. Jones,* 457 Pa. 563, 573–74, 319 A.2d 142, 148 (1974) (Opinion in Support of Affirmance) (emphasis supplied); *see also Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978), *overruled Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328 (1983); *Commonwealth v. Schaller,* 493 Pa. 426, 426 A.2d 1090 (1982). The jury was, in fact, given instructions regarding Murder of the First Degree (N.T. 10/22/82 at 2785), Murder of the Third Degree (N.T. 10/22/85 at 2788), Voluntary Manslaughter (N.T. 10/22/82 at 2789), and Involuntary Manslaughter (N.T. 10/22/82 at 2793).

Appellant argues, however, that:

Recent Pennsylvania Supreme Court decisions have made it clear that the trial court, when instructing the jury on their inherent [mercy dispensing powers] must explain the nature of the power as well as the scope. *Commonwealth v. Cain,* [471 Pa. 140, 162, 369 A.2d 1234, 1245 (1977)]. In elaborating upon this duty, the Court in *Schaller* [stated]:

It is clear that the jury should be instructed on the *full extent* of its power so it may exercise its common sense judgment in determining not only the guilt or innocence of the accused, but also, the degree of guilt if guilt is found.

*Commonwealth v. Schaller, supra* 493 Pa. at 430, 426 A.2d at 1092.

(Appellant's Brief at 63). Appellant, however, neglects to acknowledge that neither *Cain* nor *Schaller* commanded the support of a majority of the Supreme Court. Appellant also neglects to acknowledge that the Supreme Court has virtually abandoned *Commonwealth v. Jones, supra,* and all its progeny, including *Cain* and *Schaller.*

In *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), Justice Larsen, writing for the majority, summarized the current status of *Jones* and its progeny as follows:

There is little or no vitality left to this practice which stems from this Court's decisions in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied* 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974) and *Commonwealth v. Manning*, 477 Pa. 495, 384 A.2d 1197 (1978). The continuing validity of the rule was seriously undermined by our decision holding that an instruction on involuntary manslaughter may be given *only* where the evidence would support such a verdict. *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980); *Commonwealth v. Williams*, 490 Pa. 187, 415 A.2d 403 (1980). The death knell to the practice regarding instructions on voluntary manslaughter was sounded in *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) wherein a majority of this Court held that a trial court may charge on the 'unreasonable belief' sub-class of voluntary manslaughter, 18 Pa.C.S.A. § 2503(b), only where evidence exists that would support such a verdict. 466 A.2d 1328. The majority did not decide the propriety of the practice of charging the jury on 'heat of passion' voluntary manslaughter, 18 Pa.C.S.A. § 2503(a) in the absence of evidence, 466 A.2d 1331, n. 8, although the concurring opinions of this author and Mr. Justice McDermott would have abolished that practice as well.

504 Pa. at 450 n. 10, 475 A.2d at 711 n. 10.[9]

*Commonwealth v. Jones, supra*, was intended to eliminate the arbitrariness which then existed in murder trials,

---

**9.** Chief Justice Nix, the author of the *Jones* decision, has since stated:

I am also unimpressed by ... arguments offered by those who advocate vesting in the jury some undefined quantum of 'mercy dispensing power.' As noted in [*Commonwealth v. Gartner and Pfaff*, 475 Pa. 512, 381 A.2d 114 (1978) (Nix, then J., dissenting], 'the term 'mercy dispensing power' is merely a euphemism to justify a rationally unsupportable verdict.' 'Not only does this approach invite arbitrary action by juries, it also leaves a reviewing court powerless to ascertain and to remedy discriminatory verdicts.'

*Commonwealth v. Manning, supra*, 384 A.2d at 1201 (Nix, then J., dissenting); *Cf. California v. Brown*, —— U.S. ——, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987).

Justice McDermott has reasoned:

If the Commonwealth charges murder, they should be obliged to prove all the elements or fail of their charge. The jury ought not be

by removing from the discretion of trial judges the decision of whether to give instructions regarding lesser included offenses. Despite its laudable aims, *Jones* merely shifted the power to be arbitrary from trial judges to juries. The core of the problem, the invitation to a jury to base its verdict upon an arbitrary decision to grant or withhold mercy, rather than upon the facts and law presented, remained.

It now appears, however, that a defendant in a murder case (or any other type of case) will be entitled to a charge upon a lesser included offense or legal defense only when there has been *some* evidence presented to support the charge. *See Commonwealth v. White, supra,* 490 Pa. at 181, 415 A.2d at 400; *Commonwealth v. Brown, supra,* 491 Pa. at 512, 421 A.2d at 662; *see also Commonwealth v. Wilds,* 240 Pa.Super. 278, 362 A.2d 273 (1976) (*en banc*). In *no* case will a defendant be entitled to a charge which invites the jury to return its verdict based upon mercy rather than fact. *See Commonwealth v. Hathaway,* 347 Pa.Super. 134, 147, 500 A.2d 443, 449–50 (1985); *Commonwealth v. Brown,* 273 Pa.Super. 468, 470–71, 417 A.2d 743, 744–45 (1980).

Appellant argues further that the instructions with respect to Voluntary Manslaughter, Diminished Capacity, and Justification (self-defense), were confusing, incomplete and incorrect. (Appellant's Brief at 64–81). We have reviewed: the briefs of counsel; the Commonwealth's suggested Points for Charge; appellant's Points for Charge;

> invited to compromise a defendant into a lesser charge of homicide because they are doubtful of the proofs. Both the Commonwealth and defendant are entitled to the charge proved, or nothing. To say that the jury may show 'mercy' by reducing murder to voluntary manslaughter is a watery 'mercy' if it results from an available compromise of the truth of the occasion....
>
> "Mercy" is not a factor to be considered. "Mercy" is a quality that strains the truth determining process. It overlooks, it forgets, it forgives, it has its place, but certainly not in the determination of facts.
>
> *Commonwealth v. Carter, supra,* 502 Pa. at 446, 466 A.2d at 1333 (McDermott, J., concurring).

the arguments of counsel prior to the charge (N.T. 10/21/82 at 2640–64; N.T. 10/22/82 at 2667–70); the original charge to the jury (N.T. 10/22/82 at 2765–2826); appellant's exceptions (N.T. 10/22/82 at 843–44); and the written questions from the jury, the arguments of counsel, and the trial court's supplemental instructions (N.T. 10/22/82 at 2844–58; N.T. 10/23/82 at 2865–2916). In light of the standard of review set forth, *supra,* we find no abuse of discretion.[10]

## IV.

■ Appellant next contends that the trial court abused its discretion with regard to various rulings adverse to appellant made throughout the trial. After citing a myriad of specific instances of alleged error or abuse of discretion (Appellant's Brief at 81–89), appellant candidly admits that, "[s]tanding in isolation many of these rulings · may not constitute prejudicial error." (Appellant's Brief at 89). However, appellant argues that, "the cumulative impact of these rulings reaches the level of 'manifestly, unreasonable' or 'bias, judgment.'" (Appellant's Brief at 89). We cannot agree.

"It is well established that, 'an abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown on the record, discretion is abused.'" *Commonwealth v. Moyer,* 497 Pa. 643, 647, 444 A.2d 101, 102 (1982); *see also Commonwealth v. Goldblum,* 498 Pa. 455, 464, 447 A.2d 234, 239 (1982); *Garrett's Estate,* 335 Pa. 287, 292, 6 A.2d 858, 860 (1939).

Appellant presents allegations with respect to the trial court's control of the order of proof, of the admission of evidence, and of the conduct of direct and cross-examination. We note that trial judges enjoy broad powers of discretion in these areas. *See Commonwealth v. Pittman,*

---

**10.** We note that appellant's arguments under this section regarding self-defense and the jury's "mercy dispensing power" have also been considered and rejected elsewhere in this opinion.

*supra,* 320 Pa.Superior Ct. at 172, 466 A.2d at 1373 (admission of evidence, conduct of direct and cross-examination); *Commonwealth v. Smallwood,* 497 Pa. 476, 484, 442 A.2d 222, 225 (1982) (control of the order of proof); *see also Commonwealth v. Stinnett,* 356 Pa.Super. 83, 98, 514 A.2d 154, 162 (1986) (control of cross-examination); *Commonwealth v. Johnson,* 355 Pa.Super. 123, 141, 512 A.2d 1242, 1251 (1986) (control of the order of proof).

Upon review of each of the allegations individually, and all in the aggregate, we find no abuse of discretion. Rather, we find that the learned trial judge waded cautiously through a morass of complicated legal issues, and sagely exercised control where potentially prejudicial, inflammatory and inadmissible testimony was involved.

## V.

Finally, appellant contends that the trial court abused its discretion in sentencing the appellant to a consecutive term of imprisonment of five to ten years on the conspiracy conviction. Appellant argues that: the information and verdict slip were defective in that they included two offenses—conspiracy to commit murder and conspiracy to commit arson; the trial court's statement of reasons for sentencing were inadequate; and that the sentence was manifestly excessive. We cannot agree.

Appellant was not charged with two separate conspiracy offenses, rather she was charged with having committed one conspiracy offense with multiple objectives. *See* 18 Pa.C.S.A. § 903(c). Consequently, no violation of Pa.R. Crim.P. 228 (technical or otherwise) occurred. *Cf. Commonwealth v. Hill,* 340 Pa.Super. 155, 165 & n. 6, 489 A.2d 889, 894 & n. 6 (1985).

Appellant's motion for reconsideration failed to preserve the issue of whether the trial court's statement of reasons for the sentence was adequate. *See Commonwealth v. Martin,* 328 Pa.Super. 498, 477 A.2d 555 (1984) (*en banc*). Furthermore, our review of the sentencing

transcript discloses that adequate reasons were stated on the record. (N.T. 9/24/84 at 17–20).

 Appellant's contention that the sentence is manifestly excessive is a challenge to the discretionary aspects of the sentence. Upon review of appellant's brief, we find that appellant has failed to set forth the separate concise statement of reasons for allowance of appeal under 42 Pa.C.S.A. § 9781(b) required by Pa.R.A.P. 2119(f). *See Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Although this Court has the authority to grant leave to amend the brief, or to file a new brief to correct such an omission, no application has been made for permission to do so in the instant case. *See* Pa.R.A.P. 902; Pa.R.A.P. 2501. Thus, appellant's challenge of the discretionary aspects of the sentence is not properly before this Court. We note that the sentencing factors which appellant claims were not considered by the court (Appellant's Brief at 96–97) were in fact presented during the sentencing hearing and considered by the court in imposing sentence. (N.T. 9/24/84 at 4–20).

## CONCLUSION

Based upon the foregoing reasons, judgment of sentence is affirmed.