J-S29028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                  :             PENNSYLVANIA
                                            :
              v.                                :
                                            :
                                            :
DENNIS L. PENHOLLOW JR.            :
                                            :
            Appellant                   :    No. 906 WDA 2021

Appeal from the Judgment of Sentence Entered June 16, 2021
In the Court of Common Pleas of Jefferson County
Criminal Division at CP-33-CR-0000147-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:           **FILED: OCTOBER 17, 2022**

      Dennis L. Penhollow, Jr. (Appellant), appeals from the judgment of sentence imposed after he pled guilty to one count each of burglary, robbery, conspiracy to commit burglary, and conspiracy to commit robbery.[1]  Appellant challenges the denial of his post-sentence motion to withdraw his guilty plea. After careful review, we affirm.

      According to the affidavit of probable cause of Pennsylvania State Police Trooper Kyle Lowry (Trooper Lowry) dated January 25, 2021, Trooper Lowry was dispatched to the scene of an assault at 228 Main Street, Anita,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3502(a)(1)(i), 3701(a)(1)(ii), 903.  Appellant also pled guilty to six counts of theft by unlawful taking related to his theft of firearms. **See** 18 Pa.C.S.A. § 3921(a).  Those counts merged at sentencing.

Pennsylvania. Affidavit of Probable Cause, filed 2/8/21, at 1. Trooper Lowry

explained:

> At the residence, patrol members met with victims Megan Montini [(Montini)], George Slider [(Slider)], and Dennis Dinger [(Dinger)]. Montini was observed covered in blood and with a laceration on her head and a black eye from the assault. … Montini was subsequently rushed to the Punxsutawney ER via ambulance.
>
> When questioned on scene[,] Slider and Dinger related they arrived at the residence and observed a gray Hyundai Elantra with a New York registration parked in front of Slider's apartment. Both Slider and Dinger entered the residence and were confronted with two males brandishing knives. The two males subsequently chased Slider and Dinger out of the residence while … brandishing the knives. Slider and Dinger then observed the two males entering the gray Hyundai Elantra and fleeing towards Punxsutawney. Slider related the only person he knew from New York was Blake Truver [(Truver),] who matched the description of one of the males.
>
> The vehicle description was [relayed] to dispatch[,] who forwarded it to Patrol members. The vehicle was subsequently observed by a PSP Patrol member traveling north on State Route 37 toward Brookville, PA. A traffic stop was initiated[;] however the vehicle then fled north of SR 36 leading troopers on a pursuit that ended with the vehicle crashing. Truver was identified as the driver of the vehicle while [Appellant] was identified as the front seat passenger. … Both Truver and [Appellant] were life flighted from the scene to Erie, PA.
>
> The vehicle was towed back to PSP Punxsutawney …. Inside the vehicle in plain view [*sic*] guitars with an amplifier, kni[v]es matching the description provide[d] by Slider and Dinger and a cellphone matching the description provided by Montini.

*Id.* at 1-2.

At the hospital, Montini described the incident to Trooper Lowry, who

included the following details in his affidavit of probable cause:

… Montini described the incident as at approximately 1000 hours, one male arrived at her house and related[,] "surprise it's Mike". [Not knowing] who the male was Montini shut the door. Montini [relayed] approximately 15-20 minutes later, the same male arrived back at her residence. … While communicating with the one male, she slightly opened the door to which [*sic*] she was struck in the top of the head with a tire iron. The actor then proceeded to strike her numerous times with a closed fist and held her down while the other actor stole seven firearms, guitars, [a] cell phone, car keys and her purse. … Montini [was] treated at the Punxsutawney [hospital] for a laceration to the head requiring stiches and a CT scan to determine the extent of her injuries.

Montini was interviewed at the PSP Punxsutawney, during this interview Montini [explained] that while being held down by one actor (Truver), the other actor [(Appellant)] was yelling "just do it, just stab her. Spill her blood more."

*Id.* at 2.

On January 25, 2021, the Commonwealth filed a criminal information charging Appellant with the above crimes; the Commonwealth also charged Appellant with aggravated assault, 18 Pa.C.S.A. § 2702(a)(1). Criminal Information, 1/25/21. On April 27, 2021, the trial court entered an order stating: "[T]he defendant's last day to enter into a negotiated plea agreement is June 2, 2021; jury selection is scheduled for June 9, 2021." Order, 4/27/21. On May 26, 2021, the trial court scheduled a plea hearing for June 2, 2021.

On June 2, 2021, Appellant completed a written guilty plea colloquy and entered an open guilty plea to the above charges.[2] The trial court thereafter sentenced Appellant to an aggregate 18 - 50 years in prison. Appellant filed

---

[2] The Commonwealth *nolle prossed* the charge of aggravated assault.

a post-sentence motion seeking to withdraw his guilty plea and for modification of sentence. The trial court denied Appellant's request to withdraw his guilty plea, but corrected the sentence to properly reflect that Appellant's conspiracy convictions were for robbery and burglary (not two burglaries). *See* Order, 7/1/21, at 1-2 (unnumbered). The trial court otherwise denied relief. *See id.* Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

1. Whether the [trial] court erred by denying [Appellant's] request to withdraw his guilty plea on the basis that said plea was not knowingly, voluntarily and intelligently entered when the Guideline Sentence Forms provided by the Commonwealth in conjunction with its plea offer applied a Deadly Weapons Enhancement only to one count of Burglary, but the guideline forms included in [Appellant's] presentence report, and utilized by the court at sentencing, applied the Deadly Weapons Enhancement to one count each of Conspiracy to commit Burglary, Robbery, and Conspiracy to commit Robbery, in addition to the one Burglary count[?]

2. Whether the [trial] court erred by denying [Appellant's] request to withdraw his guilty plea when the court scheduled him for jury selection on June 9, 2021, and established June 2, 2021, as his last day to enter a negotiated plea in violation of Pa.R.Crim.P. 590(B)(3), and [Appellant] did not receive a plea offer from the Commonwealth until approximately one hour before he was scheduled to go before the court on June 2, 2021[?]

3. Whether the [trial] court erred by sentencing [Appellant] for two separate Conspiracy Counts, one each for Burglary and Robbery, when the evidence of record does not support the court's conclusion that there were two distinct conspiracies at separate times[?]

- 4 -

4. Whether the [trial] court erred by refusing to modify [Appellant's] aggregate sentence of 18 to 50 years when the sentencing guidelines used by the court were improper in the following respects:

(a) The offense gravity score for the Conspiracy/Burglary charge was based on a deadly weapon-used enhancement for which [Appellant] was not put on notice[; Appellant] could not have used a deadly weapon during the conspiracy phase of the crime and there is nothing in the record that would support a finding that he possessed a deadly weapon at the time of the conspiracy[?]

(b) The offense gravity score for the Robbery charge was based upon a deadly weapon-used enhancement for which [Appellant] was not put on notice[?]

(c) The offense gravity score for the Conspiracy/Robbery charge was based upon a deadly weapons-used enhancement for which [Appellant] was not put on notice. [Appellant] could not have used a deadly weapon during the conspiracy phase of the crime and there is nothing in the record that would support a finding that he possessed a deadly weapon at the time of the conspiracy[?]

Appellant's Brief at 4-5.

Appellant first argues the trial court improperly denied his request to withdraw his guilty plea. *Id.* at 12. Appellant acknowledges that he agreed to an "open plea." *Id.* Notwithstanding, he asserts "this was not an entirely open plea." *Id.* According to Appellant, the terms of the plea "consisted of the sentencing guidelines presented by the Commonwealth in conjunction with its plea offer, and the Commonwealth's offer to withdraw the Aggravated Assault charge." *Id.* (citation omitted). Appellant claims the sentencing guidelines included in his written plea did not put him on notice that the deadly

weapon enhancement (DWE) would apply to his conviction of conspiracy to commit robbery. *Id.* at 13. Appellant argues:

> Conspiracy to Commit Robbery carries an Offense Gravity Score of 9. With [Appellant's] Prior Record Score of 5, the standard sentencing range would be 48 to 60 months. The total guideline range upon which [Appellant] relied in deciding to plead guilty was therefore 234 to 282 months (or 19½ years to 23½ years).
>
> The sentencing guildelines set forth in the presentence report presented to the court were as follows: … Conspiracy/Robbery – 66 to 78 months. **The guidelines set forth for Conspiracy/Robbery purported to not apply the DWE, but the enhancement was in fact applied[;] otherwise the sentencing range would have been 48 to 60 months.** … [Appellant] understood and voluntarily accepted the plea offer proposed by the Commonwealth with a total guideline range of 234-282 months. He did not voluntarily, knowingly and intelligently agree to a plea offer that carried a total guideline range of 288 to 336 months….

*Id.* at 13-14 (citations omitted, emphasis added)).

This Court reviews the denial of a request to withdraw a guilty plea for an abuse of discretion. ***Commonwealth v. Davis***, 191 A.3d 883, 889 (Pa. Super. 2018). An abuse of discretion is more than an error in judgment; we will not find an abuse of discretion unless the trial court's judgment was manifestly unreasonable, or the result of partiality, bias, or ill will. ***Commonwealth v. Gordy***, 73 A.3d 620, 624 (Pa. Super. 2013).

Appellant sought to withdraw his guilty plea after he was sentenced.

> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered

- 6 -

knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

***Commonwealth v. Broaden***, 980 A.2d 124, 129 (Pa. Super. 2009) (citations omitted).

"Our law presumes that a defendant who enters a guilty plea was aware of what he was doing," and "[h]e bears the burden of proving otherwise." ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted). To ensure a plea is voluntary, knowing, and intelligent,

Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a trial court conduct a separate inquiry of the defendant before accepting a guilty plea. ... As the Comment to Rule 590 provides, at a minimum, the trial court should ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range or sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. Hart*, 174 A.3d 660, 667-68 (Pa. Super. 2017) (quoting Pa.R.Crim.P. 590, cmt.). Inquiry into the above areas is mandatory. *Commonwealth v. Willis*, 369 A.2d 1189, 1190 (Pa. 1977). "The purpose of [Rule 590] is to [e]nsure that the defendant fully understands the nature of the crimes to which he or she is pleading guilty and the rights that are being waived by the plea." *Commonwealth v. Carter*, 656 A.2d 463, 465 (Pa. 1995). The Comment to Rule 590 further states that "nothing in the rule would preclude the use of a written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings." Pa.R.Crim.P. 590, cmt.

Our review discloses that Appellant executed a written plea colloquy which accurately informed Appellant of the maximum punishment he could receive for each crime, as well as the standard and aggravated guideline ranges. Written Colloquy, 6/2/21. For the crimes of robbery, burglary and conspiracy, the colloquy indicated: "Guideline Enhancements <u>N/A</u>" *Id.* The colloquy also indicated Appellant was entering an "open plea." *Id.* The written plea colloquy did not advise Appellant that the trial court could impose consecutive sentences, or specifically advise Appellant the court could sentence outside of the guideline ranges. *See id.*

At the oral plea colloquy, the trial court did not state, on the record, the applicable guideline ranges. Rather, the court inquired:

THE COURT: So[,] you understand everything that's going on?

- 8 -

[Appellant]: Yes.

THE COURT: Do you understand the guideline ranges?

[Appellant]: Yes. Now that I know I've got ten charges when I thought I only had four, yes.

THE COURT: Do you understand the maximum fines and punishments?

[Appellant]: Yes.

THE COURT: Did you see the [court] movie concerning your plea and sentence rights?

[Appellant]: Yes.

THE COURT: Did you understand that movie?

[Appellant]: Yes.

N.T., 6/2/21, at 3.

The trial court inquired as to Appellant's understanding of the elements of the crimes charged, and Appellant's right to a jury trial. *See id.* at 3-5. However, Appellant waived "a reading of the facts," *id.* at 5, and the trial court did not reference a DWE. Upon review, we conclude the totality of circumstances do not demonstrate "prejudice on the order of manifest injustice." *See Broaden*, 980 A.3d at 129; *see also Commonwealth v. Moser*, 921 A.2d 526, 528-29 (Pa. Super. 2007) (Pennsylvania law does not "require the defendant to be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made.").

- 9 -

The record reveals that a presentence investigation report was prepared, and the report included the guideline ranges for conspiracy to commit robbery with a DWE. At sentencing, defense counsel acknowledged reviewing the presentence investigation report. N.T., 6/16/21, at 2. Counsel did not object to the ranges of sentences in the report. *See id.*

This Court encountered a similar issue in ***Broaden***, ***supra***, where the defendant pled guilty to several counts of aggravated assault, among other offenses. ***Broaden***, 980 A.2d at 126-27. Nearly two months after the defendant entered his plea, the Commonwealth filed a notice of intent to seek a "second strike" mandatory minimum sentence under 42 Pa.C.S.A. § 9714, based on the defendant's prior conviction for robbery. *Id.* at 127 & n.2. One month later, the trial court sentenced the defendant to the 10-year mandatory minimum under Section 9714. *Id.* at 127. The defendant filed a timely post sentence motion seeking to withdraw his plea, which the trial court denied. *Id.*

On appeal, this Court concluded the defendant's plea "was deficient" because the Commonwealth failed to fully inform him of its intent to seek a mandatory minimum sentence prior to the entry of the plea. *Id.* at 130 & n.4. Nevertheless, we did not grant relief, reasoning that the Commonwealth's presentence notice provided the defendant with "ample time to prepare a motion to withdraw his guilty plea," but he "declined this opportunity and chose to proceed with the sentencing." *Id.* at 131. We

affirmed the judgment of sentence, holding that "[b]y opting to proceed with sentencing, [the defendant] waived his contention that his guilty plea was not knowing because he had not been notified of the mandatory minimum sentence." *Id.*

Similarly, in this case, Appellant was apprised in the presentence investigation report of the applicable guideline ranges for his charges. Appellant did not object, and proceeded with sentencing. *See* N.T., 6/16/21, at 2. In addition, Appellant was advised in his written plea colloquy of the maximum sentences for each crime. Written Colloquy, 6/2/21. Under these circumstances, we cannot conclude that Appellant suffered "prejudice on the order of manifest injustice." *See Broaden*, 980 A.2d at 129. Thus, Appellant's first issue does not merit relief.

In his second issue, Appellant argues the trial court improperly denied his request to withdraw his plea based on the trial court's violation of Pa.R.Crim.P. 590(B). Rule 590(B)(3) prohibits any local rule "mandating deadline dates for the acceptance of a plea entered pursuant to a plea agreement." Pa.R.Crim.P. 590(B)(3). Appellant claims the trial court violated Rule 590 by ordering that the "last day to enter a negotiated plea agreement is June 2, 2021." Appellant's Brief at 16. According to Appellant,

> the court's violation of Rule 590(B)(3)[] was compounded by the fact that the Commonwealth did not make a plea offer to [Appellant] until 12:52 p.m. on June 2, 2021, and [Appellant] was required to appear before the court at 2:00 p.m. that day. … The violation of Rule 590, coupled with the Commonwealth's "eleventh hour" plea offer and the discrepancy between the sentencing

guidelines presented by the Commonwealth in conjunction with said plea offer and the sentencing guidelines employed by the court, deprived [Appellant] of any meaningful opportunity to understand the plea offer and to voluntarily and intelligently decide whether or not to plead guilty. [Appellant] had approximately one hour to decide if he wanted to accept the plea offer or lock himself into picking a jury.

Appellant's Brief at 16-17.

Upon review, we discern no violation of Rule 590 by the trial court, which did not promulgate a local rule mandating a deadline for the plea agreement. Further, our review discloses that defense counsel did not request an extension of time to consider the plea offer, or a continuance of the trial date. The trial court explained:

The court set June 2, 2021 as [Appellant's] last day to enter a negotiated plea. It did so, not pursuant to a local rule, but in consideration of this specific case. Rule 590(B)(3) did not disallow that. Nor did it preclude the Commonwealth from waiting until that day to make an offer, and [Appellant's] bald assertion is not proof [the court's] decision to do so in this case left him without sufficient time to consult with his attorney and make a knowing and intelligent decision to accept the offer[,] rather than pick a jury the next week. Counsel certainly knew, therefore, that he and his client had the entire morning to discuss the pros and cons of pleading guilty versus going to trial.[FN] The court thus presumes that counsel did his job appropriately and was satisfied while standing with [Appellant] that day that he was entering knowing and voluntary pleas of guilty, and the record does not indicate otherwise.

_____

[FN] The order scheduling June 2 as [Appellant's] last day to plead did not in fact dictate a time cut-off, and counsel, having done so with prior clients, knew the court would interrupt afternoon [] hearings to accommodate defendants who wished to plead guilty even after arraignment, plea, and sentencing court was officially concluded.

- 12 -

As the record reflects, [Appellant] did not request a continuance; he did not allege orally or in writing that he needed more time under the circumstances to consider his options. Nor did he indicate at his plea or sentencing hearing that his decision to plead guilty was anything other than volitional. Given the intensity with which he made his plea for a light sentence, (**see** Sentencing Transcript, 06/16/21, pp. 4-13, 17, & 22-23), the court cannot reasonably attribute his silence to a reticence to speak on the record ….

Trial Court Opinion, 3/14/22, at 2-3 (one footnote in original; one footnote and some capitalization omitted). As the record supports the trial court's reasoning, Appellant's second issue does not merit relief.

In his third issue, Appellant challenges the imposition of separate sentences for his guilty plea to two counts of criminal conspiracy. Appellant's Brief at 17. Appellant claims the record does not support the existence of two distinct conspiracies. *Id.* Appellant argues: "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or a *continuous conspiratorial relationship*." *Id.* (emphasis in original). According to Appellant, there are no factual allegations establishing two separate and distinct conspiracies. *Id.* at 18. Appellant directs our attention to **Commonwealth v. Lore**, 487 A.2d 841 (Pa. Super. 1984), in which we held that a defendant should have been sentenced on only one count of conspiracy because his acts were part of a common scheme or design. *Id.* at 18-19.

The Crimes Code states:

> If a person conspires to commit a number of crimes, he is guilty of only one conspiracy **so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship**.

18 Pa.C.S.A. § 903(c) (emphasis added).

Here, the record demonstrates that Appellant was aware he was charged and sentenced with separate counts of criminal conspiracy.

Appellant's criminal information charged him with only one count of criminal conspiracy:

> In that the actor did with the intent of promoting and or facilitating the crimes of Burglary, Robbery, Aggravated Assault, Theft by Unlawful Taking[,] agree with Blake Truver, co-actor, that they or one or more of them will engage in conduct which constitutes such crime by entering a residence that is adapted for overnight accommodations belonging to Megan Montini, victim, who was home at the time and commits bodily injury to the victim by striking her with a tire iron causing a laceration to her head and striking her numerous times with a closed fist and holding her down while one of them stole items from the residence.

Criminal Information, 5/4/21, Count 2.

However, on June 2, 2021, the Commonwealth **and Appellant** stipulated to amending the criminal information to include the additional, now disputed, count of conspiracy to commit robbery. Stipulation Amending Information, 6/2/21. In his written plea colloquy, Appellant entered an open guilty plea to **two** counts of conspiracy, and the count of aggravated assault was *nolle prossed*. Written Plea Colloquy, 6/2/21.

- 14 -

At the plea hearing, the trial court asked Appellant whether he understood the nature of the charges against him, including the separate charges for conspiracy to commit burglary and conspiracy to commit robbery:

> THE COURT: **Do you understand that for Burglary**, the Commonwealth would have to prove beyond a reasonable doubt that you or with another entered a building with the intention of committing a crime inside that building?
>
> [Appellant]: Yes.
>
> THE COURT: **Do you understand that for Conspiracy to Commit Burglary**, the Commonwealth would have to prove beyond a reasonable doubt that you agreed with another person that either you or them or someone else would enter the building to commit the burglary; do you understand that?
>
> [Appellant]: Yes.
>
> THE COURT: **For Robbery**, the Commonwealth would have to prove beyond a reasonable doubt that through the threat of force, you committed a crime or attempted to take the property from another person, you or another; do you understand that?
>
> [Appellant]: Yes.
>
> THE COURT: **For Conspiracy to Commit Robbery**, the Commonwealth would have to prove beyond a reasonable doubt that you agreed with another person that either you or that person or someone else would commit the robbery; do you understand that?
>
> [Appellant]: Yes.

N.T., 6/2/21, at 4-5 (emphasis added).

In addition, the presentence investigation report recommended separate sentences for Appellant's convictions of conspiracy to commit burglary and conspiracy to commit robbery. Presentence Investigation

- 15 -

Recommendation Counts 2, 11. Finally, in denying Appellant's post-sentence motion, the trial court explained:

> [T]he evidence showed there were two different conspiracies at two separate times: One to commit a burglary by entering a house for the purpose of taking guns; and a separate conspiracy to commit robbery on the victim who was present in the house during the burglary. There was a conversation between the defendants separately about the robbery after the burglary started. As such, those two conspiracies do not merge as they are separate and distinct conspiracies.

Trial Court Order, 7/1/21, at 2 (unnumbered).

We recognize that on a single occasion, there may be a single agreement to commit two crimes. *See Commonwealth v. Grove*, 526 A.2d 369, 379 (Pa. Super. 1987) (when on a single occasion there is a single agreement to commit two crimes, *e.g.*, murder and arson, a single conspiracy exists). Likewise, a single conspiratorial agreement may involve a continuing course of criminal conduct involving the repetition of a single crime or the commission of a series of crimes. *See Commonwealth v. Perez*, 553 A.2d 79, 79-80 (Pa. 1988) (finding a single conspiracy to commit multiple violations of separate statutes against the distribution of marijuana and the distribution of cocaine). In this case, however, Appellant agreed he committed conspiracy to commit robbery and conspiracy to commit burglary, and was informed that he could be sentenced separately for those crimes. Accordingly, we discern no error by the trial court in imposing separate sentences for Appellant's two conspiracy convictions.

In his fourth and final issue, Appellant challenges the offense gravity score for his conspiracy/burglary charge, based on a deadly weapon used enhancement. Appellant's Brief at 19. Appellant claims the trial court erred because there was no evidence he used a deadly weapon during the conspiracy, and he was not placed on notice of the enhancement. *Id.* at 19-20.

The trial court refuted this claim, explaining:

The facts to which [Appellant] pled guilty established that he and his co-conspirator did in fact *use* a tire iron to strike the victim's head, and the [c]ourt need not further pontificate about whether a tire iron constitutes a deadly weapon when used in that manner. [T]he application of the enhancement was at the [c]ourt's sole discretion, moreover … that [the court] failed to factor in how the Commonwealth completed its sentencing guideline sheets did not affect whether it abused its sentencing discretion.

Even assuming the [c]ourt used the wrong sentencing matrix—deadly weapon used rather than deadly weapon possessed—with respect to any of the Felony 1 charges, [] it is evident from the record that [Appellant] did not suffer prejudice as a result.[FN] The only reason the [c]ourt sentenced [Appellant] within the mitigated range on the Conspiracy to Commit Burglary and ignored the guidelines with respect to Conspiracy to Commit Robbery was because [the court] did not want his overall minimum to exceed 20 years. It also did not intend to go much lower than 20 years, though. ([*See* N.T., 6/16/21,] at 14-26). As it made clear on the record, [the court] utilized the guidelines only to the extent they helped it achieve its goal, the apparent implication being that it would not have given [Appellant] the same benefit, *i.e.*, mitigating one Conspiracy sentence and ignoring the guidelines on the other, had it utilized the less onerous matrix.

---

[FN] The [c]ourt completely ignored the guidelines when it sentenced [Appellant] to serve 2½ - 10 years in prison for

- 17 -

Conspiracy to Commit Robbery. [Appellant's] calculations … are thus irrelevant.

_____

The [c]ourt would further note that it did in fact consider [Appellant's] role in the commission of the crimes to which he pled guilty and, detailing its analysis of the relevant factors in open court, concluded that it did not warrant a sentence less than 18-50 years in prison. (**_See id._**).

Trial Court Opinion, 3/14/22, at 3 (emphasis and footnote in original).

As the trial court's reasoning comports with the record and law, we rely

on the reasoning with regard to Appellant's final issue. **_See id._**

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2022