J-A16033-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VERNON DONATE DUNCAN, | : | |
| | : | |
| Appellant | : | No. 1258 WDA 2015 |

Appeal from the Judgment of Sentence April 20, 2015
in the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000217-2013

BEFORE:     SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:     **FILED SEPTEMBER 30, 2016**

Vernon Donate Duncan (Appellant) appeals from the judgment of sentence imposed on April 20, 2015.  After review, we vacate the judgment of sentence and remand for resentencing.

On August 2, 2013, following a jury trial, Appellant was convicted of, *inter alia*, numerous charges related to the possession, distribution, and manufacture of marijuana and cocaine and related criminal conspiracy offenses.  On October 4, 2013, Appellant was sentenced to an aggregate term of 14 to 28 years' imprisonment.  Appellant filed a direct appeal, which this Court quashed as untimely-filed by order of February 10, 2014.

On September 15, 2014, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Counsel was appointed and on December 16, 2014, an amended petition was filed

---

*Retired Senior Judge assigned to the Superior Court.

seeking (1) resentencing in light of this Court's decision in ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa. Super. 2014), (2) reinstatement of his appellate rights *nunc pro tunc*, and (3) a new trial. A hearing on Appellant's amended petition was scheduled for March 26, 2015. On that date, the trial court granted the petition, in part, and reinstated Appellant's direct appeal rights. The trial court also granted Appellant's request for resentencing without imposition of mandatory minimum sentences pursuant to ***Valentine*** and ***Commonwealth v. Newman***, 99 A.3d 86 (Pa. Super. 2014).[1] Appellant's request for a new trial was denied.

On April 20, 2015, Appellant was resentenced to an aggregate term of 13 years and one month to 38 years of incarceration. Appellant filed timely post-sentence motions, which were denied by orders dated July 10, 2015 and July 21, 2015. This timely-filed appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises seven questions for our review, which we have renumbered for ease of disposition.

---

[1] Appellant was resentenced initially on March 26, 2015; however, on March 27, 2015, the Commonwealth filed a motion for reconsideration, pointing out that, due to a clerical error, the pre-sentence investigation report relied upon by the trial court had failed to include three of Appellant's convictions and, as a result, Appellant was not resentenced on those charges. Commonwealth's Motion for Reconsideration of Sentence, 3/27/2015. Appellant consented to the motion, which was granted by order dated April 20, 2015. Appellant was then resentenced on all charges.

I. Was the evidence presented at trial sufficient to convict Appellant of multiple conspiracy counts for possession and delivery of controlled substances?

II. Was the evidence presented at trial sufficient to convict Appellant of separate conspiracy counts for possession and delivery of controlled substances[,] marijuana and cocaine?

III. Was the evidence presented at trial sufficient to convict Appellant of any conspiracy charge?

IV. Did the trial court err by denying Appellant's post-sentence motion for a new trial due to the unfairly prejudicial nature of firearm evidence presented by the Commonwealth at trial?

V. Did the trial court err by denying Appellant's oral motion for mistrial during trial regarding the undisclosed inaccuracy of Commonwealth [E]xhibit 9[,] a hand-drawn diagram of an apartment building?

VI. Did the trial court err due to misstatements made by the [trial] court during jury instructions concerning the additional element of possession of a firearm during the crime of [PWID] which may be interpreted by a reasonable juror as direct[ing] the jury to find Appellant guilty of the underlying crime[?]

VII. Did the [trial] court abuse its discretion by imposing a maximum sentence of 38 years on April 20, 2015 to correct its prior sentence with a maximum of only 28 years imposed October 4, 2013?

Appellant's Brief at 8-9 (unnecessary capitalization, lower court answers, and suggested responses omitted).

In his first three issues, Appellant challenges the sufficiency of the evidence presented at trial to support his convictions for criminal conspiracy. *Id.* at 40-55. Specifically, Appellant argues (1) that the Commonwealth presented insufficient evidence to prove an agreement between Appellant

and any other person to sell cocaine and/or marijuana, and that even if the evidence was sufficient to support a criminal conspiracy charge it was insufficient to convict him of multiple counts of that offense. *Id.*

> To prove conspiracy, the trier of fact must find that: 1) the defendant intended to commit or aid in the commission of the criminal act; 2) the defendant entered into an agreement with another to engage in the crime; and 3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. …
>
> In reviewing a sufficiency challenge, we must evaluate the entire trial record and consider all the evidence received. Furthermore, the trier of fact, in passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Johnson*, 985 A.2d 915, 920 (Pa. 2009) (internal citations and quotations omitted).

Appellant was convicted of the following counts of criminal conspiracy related to undercover controlled narcotics purchases from his home and the subsequent execution of a search warrant on the property.

- One count of criminal conspiracy to commit PWID and one count of criminal conspiracy to commit possession of a controlled substance related to an undercover purchase of marijuana on February 5, 2013;

- 4 -

- Two counts of criminal conspiracy to commit PWID and two counts of criminal conspiracy to commit possession of a controlled substance related to undercover purchases of marijuana and cocaine, respectively, on February 14, 2013;

- Two counts of criminal conspiracy to commit PWID and two counts of criminal conspiracy to commit possession of a controlled substance related to undercover purchases of marijuana and cocaine, respectively, on March 4, 2013; and

- Two counts of criminal conspiracy to commit PWID and two counts of criminal conspiracy to commit possession of a controlled substance related to marijuana and cocaine, recovered during the search of Appellant's home on March 5, 2013.

Delores Morgan, a Bureau of Narcotics Investigation and Drug Control Agent with the Office of the Attorney General, testified that, on three occasions, she conducted controlled purchases of narcotics from Appellant's home, an apartment located at 102 Quarry Avenue, DuBois, Pennsylvania. N.T., 7/31/2013, at 50-77. The focus of Agent Morgan's investigation was a man known as "V Doe." *Id.* at 50.

On February 5, 2013, Agent Morgan, acting in an undercover capacity, purchased marijuana from Appellant in a bedroom of the apartment at 102

Quarry Avenue. *Id.* This initial controlled purchase was set up in advance by a confidential informant working for the Office of the Attorney General. *Id.* at 93. Upon her arrival at the apartment, Agent Morgan knocked and was let in by a white male, later identified as Shoby Burke. *Id.* at 53-58. Once in the apartment, Agent Morgan was approached by a black man, later identified as Appellant, who introduced himself as "V" and led her to a bedroom a few steps diagonally from the front door. *Id.* at 53-54. There, Agent Morgan purchased a little over a half ounce of marijuana for $80 in prerecorded funds. Agent Morgan testified that Appellant weighed and packaged the marijuana using a scale and baggies he pulled out of a dresser drawer. *Id.* at 55-56. Following the purchase, Agent Morgan and Appellant exchanged contact information and Agent Morgan left the apartment. *Id.* at 57-58.

Later that day, Agent Morgan received a text message from Appellant asking if she liked the marijuana. *Id.* at 59-60. Appellant informed Agent Morgan that if she wanted more, all she needed to do was come over to the apartment. *Id.*

On February 14, 2013, Agent Morgan returned to Appellant's apartment to conduct an undercover controlled purchase of marijuana and cocaine from Appellant. *Id.* at 60-66. When she reached the door of the apartment, she identified herself as "Dee, V's friend" and was let inside. *Id.*

at 61. Also present in the apartment were two black men, one of whom was identified as Appellant's roommate, Damon Seldon (Seldon). *Id.* at 66-67. The negotiations for the controlled purchase took place in the dining room, while the actual buy (including weighing of the drugs and the exchange of money) happened in Appellant's bedroom. *Id.* at 60-66. While in the dining room, Agent Morgan confirmed she wanted marijuana but also asked Appellant if he had cocaine available to purchase. *Id.* at 62. In response, Appellant led her to the same bedroom as the earlier purchase where he sold her marijuana he obtained from a duffle bag in the room's closet, and cocaine he took out of the dresser. *Id.* at 62-64. Once more, Agent Morgan paid for her purchases in prerecorded funds. *Id.* at 66.

On March 4, 2013, Agent Morgan conducted her final controlled purchase from Appellant's apartment. *Id.* at 70. Before arriving at the apartment, Agent Morgan and Appellant discussed what she would be purchasing and the price. *Id.* Upon her arrival, Appellant answered the door himself and immediately took her to the bedroom. *Id.* at 70-71. Agent Morgan purchased cocaine with prerecorded funds and marijuana on credit. *Id.* at 70-75.

On the following day, March 5, 2013, a search warrant was executed on 102 Quarry Road. *Id.* at 76-80. That search yielded, *inter alia*, 54 grams of cocaine, numerous bags of marijuana, five firearms, personal use

paraphernalia (including syringes, a smoking pipe and a hookah) and paraphernalia indicative of distribution, including six digital scales, the prerecorded controlled purchase funds used by Agent Morgan, a marijuana grinder, indicia of residence for Seldon, and a receipt for rent written to Seldon. *Id.* at 135-142, 194-195. These items were found throughout the apartment, including in both bedrooms. *Id.*

In upholding Appellant's conviction for fourteen separate counts of criminal conspiracy, the trial court concluded that "a review of the record reveals that [Appellant] and … Seldon were involved in a series of conspiracies to possess and sell illegal drugs." Trial Court Opinion, 10/8/2015, at 2 (unpaginated).

However, as our Crimes Code makes clear

> **(c) Conspiracy with multiple criminal objectives.--**If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S. § 903(c).

> Under Pennsylvania law, a single conspiracy may have multiple criminal objectives. *See* 18 Pa.C.S.[] § 903(c). Thus, when on a single occasion there is a single agreement to commit two crimes, *e.g.* murder and arson, a single conspiracy exists. **See Commonwealth v. Grove***, [] 347, 526 A.2d 369, 379 ([Pa. Super.] 1987). Likewise, a single conspiratorial agreement may involve a continuing course of criminal conduct involving the repetition of a single crime or the commission of a series of crimes. **See Commonwealth v. Perez***, [] 553 A.2d 79, 79-80 ([Pa. Super.] 1988) (finding a single conspiracy to commit

- 8 -

multiple violations of separate statutes against the distribution of marijuana and the distribution of cocaine).

**Commonwealth v. Savage**, 566 A.2d 272, 276-77 (Pa. Super. 1989).

In **Perez**, appellant pled guilty to various charges, including two counts of criminal conspiracy: one to distribute marijuana and one to distribute cocaine. **Perez**, 553 A.2d at 79. We vacated appellant's sentences for conspiracy and remanded for resentencing on a single conspiracy count, holding that "nothing presented by the Commonwealth tends to establish two separate conspiracies but rather instead tends to establish a single conspiratorial relationship from which two contraband substances were distributed[.]" **Id.** at 81. In so doing, we specifically rejected the charging scheme present in Appellant's case:

> Undoubtedly, many separate offenses were committed during the course of the conspiratorial relationship. However, under our law this does not automatically lead to a determination that there was more than one conspiracy or conspiratorial relationship. One receives the impression that had an individual called the appellant and ordered five different types of drugs from him which the appellant then agreed to sell, the Commonwealth would argue that there were five conspiracies committed. We do not read section 903(c) in that manner.

**Id.** at 81.

Similarly, here, the evidence seized from the apartment demonstrates that Seldon, the lessor, and Appellant, his tenant, entered into a single conspiracy to distribute both cocaine and marijuana from the apartment at 102 Quarry Street. This conclusion is supported by the fact that the indicia

of distribution was not confined to one room, but was spread throughout both bedrooms and the apartment common area, in spite of the fact that Appellant was Agent Morgan's only contact and the only person present in the bedroom when the deliveries were completed. Accordingly, we vacate the sentences imposed on all fourteen counts of criminal conspiracy and remand for imposition of sentence on (1) a single count of conspiracy related to PWID and (2) a single count of conspiracy related to possession of a controlled substance.

Appellant next argues that the trial court erred by denying Appellant's post-sentence motion for a new trial on the basis that admission of firearm evidence at trial was unduly prejudicial. Appellant's Brief at 56-60.

The admissibility of evidence is vested in the sound discretion of the trial court and this Court will not reverse an evidentiary ruling on appeal absent an abuse of discretion. **Commonwealth v. Brown**, 839 A.2d 433, 435 (Pa. Super. 2003). A trial court abuses its discretion when it "overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." **Id.** (citation omitted).

Before we may address Appellant's underlying claim, we must determine if the issue has been preserved for our review. "In order to preserve an issue for review, a party must make a timely and specific

objection at trial." ***Commonwealth v. Smith***, 606 A.2d 939, 942 (Pa. Super. 1992). This Court "will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected." ***Commonwealth v. Montalvo***, 641 A.2d 1176, 1184 (Pa. Super. 1994).

In his brief, Appellant indicates that he preserved this issue by including it in his post-sentence motions. Appellant's Brief at 56, n.34. However, the record herein indicates that the photographs about which Appellant now complains were entered into evidence during trial without objection. N.T., 7/31/2013, at 205; N.T., 8/1/2013, at 6. Accordingly, Appellant's issue is waived.

Appellant next contends that the trial court erred in denying his motion for a mistrial. Appellant's Brief at 61-63.

> The review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion…. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.

***Commonwealth v. Wright***, 961 A.2d 119, 142 (Pa. 2008) (citations omitted).

During trial in this matter, the Commonwealth entered into evidence Exhibit 9, a hand drawn diagram created by Agent Morgan to assist in the execution of the search warrant. N.T., 7/31/2013, at 82. Agent Morgan

testified that the drawing was not to scale, only depicted the common area and the bedroom she had entered with Appellant, and incorrectly labeled the target apartment as "106 Quarry Street." *Id.* at 82-84. When the Commonwealth moved for admission of, *inter alia*, Exhibit 9, Appellant did not object, but sought leave to cross-examine Agent Morgan before admission of any Commonwealth exhibits. *Id.* at 91. The Court granted Appellant's request. *Id.*

On cross-examination, Appellant questioned Agent Morgan regarding Exhibit 9, asking her when she realized that the diagram had mislabeled Appellant's apartment as 106 Quarry Street. *Id.* at 103-106. Agent Morgan testified that she noticed the error when they were executing the search warrant and explained to the officers present that the apartment numbers on the diagram should be reversed. *Id.* at 105. She explained that 106 Quarry Street was not searched. *Id.* Further, she informed the Commonwealth of the error on the Monday before trial. *Id.* at 105-06.

Following this testimony, Appellant's counsel sought a mistrial on the basis that Agent Morgan's error, and the Commonwealth's failure to disclose the correction, irreparably harmed his defense strategy because he had been relying on the fact that the officers searched the wrong apartment. *Id.* at 107. Counsel contended that being able to cross-examine Agent Morgan on the error was not his strategy "at all;" rather he intended to close on the fact

that Exhibit 9 "says here, this is where they went in [and] that is not where my client was" and that Agent Morgan's testimony foreclosed that option. *Id.* at 111. The Commonwealth argued that the error was not material in light of the agent's other testimony and could not constitute unfair surprise when (1) Appellant was arrested in apartment 102 during the search and (2) the warrant itself indicated that 102 Quarry Street was the targeted location and described in detail how to reach the front door of the target location. *Id.* at 108, 110-11.  The trial court ultimately denied Appellant's request for a mistrial. *Id.* at 112.

In addressing Appellant's issue, the trial court determined that "the inaccuracy of the diagram was minor and inconsequential.  Even if it caused [Appellant] prejudice, it cannot be said to have been so prejudicial as to deprive [Appellant] of a fair and impartial trial." Trial Court Opinion, 10/8/2015, at 4 (unpaginated). We agree.  While the Commonwealth should have disclosed the error prior to trial, we nevertheless do not find that a mistrial was warranted.  There was overwhelming evidence introduced at trial, through the testimony of the officers, the search warrant itself, and the fact that Appellant was ultimately arrested at 102 Quarry Street during the search, to demonstrate that the intended target of the search was 102 Quarry Street, the location where each controlled purchase had occurred. We cannot agree with Appellant that this error was so prejudicial as to deny

Appellant a fair trial. Accordingly, we hold that Appellant is not entitled to relief.

Appellant next argues that he was unfairly prejudiced by alleged "misstatements" in the trial court's instruction with respect to the two counts of PWID stemming from the March 5, 2013 search of 102 Quarry Street. Appellant's Brief at 64-66.

It is well-settled that "[i]n order to preserve a claim that a jury instruction was erroneously given, the appellant must have objected to the charge at trial." **See Commonwealth v. Spotz**, 84 A.3d 294, 318 n. 18 (Pa. 2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

Here, the notes of testimony reveal that Appellant's counsel did not object to the instruction about which he now complains. N.T., 8/2/2013, at 16. Moreover, when asked if he had any exceptions to the court's charge, trial counsel responded "none on behalf of [Appellant]". **Id.** at 36. Accordingly, we conclude that this issue is waived.

Finally, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 37-40. Based on our conclusion that the evidence is insufficient to support Appellant's conspiracy convictions and resentencing is required, we need not reach this issue. However, we note that, in resentencing Appellant the trial court is bound our determination in **Commonwealth v. Serrano**, 727 A.2d 1168, 1170 (Pa. Super. 1999) (holding that "whenever a judge imposes a more severe sentence upon a defendant [following remand] ... the reasons for doing so must affirmatively appear [on the record, in] order to overcome the presumption of vindictiveness.").

In sum, we find the evidence insufficient to support Appellant's fourteen separate conspiracy convictions; thus, we vacate twelve of those convictions and remand for resentencing on (1) a single count of conspiracy related to PWID and (2) a single count of conspiracy related to possession of a controlled substance. We affirm the remainder of Appellant's convictions.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>9/30/2016</u>