431 A.2d 949

COMMONWEALTH of Pennsylvania

v.

**Barbara WATSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 21, 1981.

Decided July 8, 1981.

468

469

David Kanner, Philadelphia County, for appellant.

Robert B. Lawler, Eliot Present, Philadelphia County, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

LARSEN, Justice.

On August 7, 1978, appellant Barbara Watson was found guilty, in a non-jury trial, of voluntary manslaughter and possession of a concealed weapon with intent to employ it criminally, both arising out of the shooting death of her common law husband, Matt Lee Black. Post-trial motions in arrest of judgment and for a new trial were denied, and on

May 4, 1979 appellant was sentenced to a term of imprisonment of three to twenty-three months for each conviction, the sentences to be served concurrently.[1] This direct appeal followed.

In this appeal, appellant challenges the sufficiency of the evidence supporting each of her convictions. "In reviewing the sufficiency of the evidence to support a conviction, we must view that evidence in the light most favorable to the verdict winner, here the Commonwealth; all reasonable inferences which may be drawn from the evidence must be drawn favorably to the verdict winner as well." *Commonwealth v. Burns*, 490 Pa. 352, 354, 416 A.2d 506, 507 (1980).

The record in this case reveals the following facts. Appellant and Mr. Black lived together for ten years, beginning in 1968, during which time they had three children. Their relationship was marked by arguments, frequently over nothing, during which appellant's husband often hit her. On the night of the shooting, appellant, her husband and two of their friends spent some time at the home of one friend's daughter. After the four had left the daughter's home, appellant and the decedent began arguing.[2] At the time, appellant and her husband were walking together about thirty to forty feet ahead of their friends. Appellant, in her statement to the police, described the events that followed:

> I was calm and all right up until we left and when we got outside I was walking up the street and he went to jump on my back and I pulled the gun out of my pocketbook and I shot. I was scared of him. That's all.

One of the friends accompanying appellant and her husband, Kelly Quarles, testified as a witness for the Commonwealth that Mr. Black hit appellant, knocked her down and jumped on top of her before the shooting. Mr. Quarles stated: "I

1. Appellant has remained free on bail since shortly after her arraignment, from April 19, 1978 to the present.

2. This was the third argument that took place between appellant and her husband that night. Earlier, Mr. Black, in response to a question, had hit appellant, knocking her down in the street and causing her to hurt her forehead, hand and knee; and he had subsequently threatened appellant in their home with a baseball bat.

know one time he got her around the neck some kind of way or another. And that's when I heard the shots, when he got her around the neck." At trial appellant testified as follows:

So we was walking, you know, up the street. And he just hauled off and grabbed me around the neck and shoulders and started choking me. And he had me down on the ground. And I was scared. And he said, "You black bitch, I should have killed you a while ago when we was at the house."

And I was scared. It was me or him. I didn't know what to do, I was so scared. I was scared he was going to kill me, because he told me he was going to kill me.

So that's why I shot him. I don't know how I managed to get to the gun. I was just scuffling down on the ground. It was me and him.

The parties stipulated that appellant "bears an excellent reputation for being a peaceful, decent and law-abiding citizen."

■■■ Appellant correctly asserts that there was insufficient evidence to prove beyond a reasonable doubt that the shooting of her husband was not done in self-defense.

Where an accused raises a defense of self-defense, the burden of the prosecution is to prove beyond a reasonable doubt the killing was not done in self-defense. . . . The Commonwealth sustains its burden if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that she was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save herself therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Burns, supra,* at 507 (citation omitted).

■■■ The central issue in this case stems from the trial court's finding that appellant's belief—that she was in immi-

nent danger of death or great bodily harm at the time of the shooting—was unreasonable, based upon its view of the parties' relationship involving "a long course of physical abuse," and based upon the fact that the decedent had no weapon at the time of the shooting.[3] We do not agree with the trial court's conclusion.

■ A woman whose husband has repeatedly subjected her to physical abuse does not, by choosing to maintain her family relationship with that husband and their children, consent to or assume the risk of further abuse. That woman faces a difficult choice: she must decide whether to endure continued abuse, or whether to leave her home or otherwise terminate her family relationship in order to avoid further mistreatment. Not surprisingly, some of those women who have "decided" to suffer years of abuse suddenly reach the "breaking point" and react violently.

■ In a case such as this, in which there has been physical abuse over a long period of time, the circumstances which assist the court in determining the reasonableness of a defendant's fear of death or serious injury at the time of a killing include the defendant's familiarity with the victim's behavior in the past. *See* A. Eisenberg & E. Seymour, The Self-Defense Plea and Battered Women, 14 Trial Nos. 7, 34, 41 (1978) ("If she had knowledge, at the time, of prior specific acts of violence by the victim . . . , that knowledge had to work on her mind, causing greater fear than if she had lacked such knowledge."); Comment, 6 Pepperdine L.Rev. 213, 223 (1978) ("[T]here is no reason why a finding

**3.** The trial court in this case made no findings on the issues of provocation or retreat. *See* 18 Pa.C.S.A. § 505(b)(2)(i), (ii). We have reviewed the record, however, and have determined that there is no evidence that appellant provoked her husband to use force against her; nor that appellant had any warning that her husband was planning to jump on her back in an attempt to choke her, or that appellant had any opportunity to retreat once Mr. Black had lunged at appellant and placed his hands around her neck. We therefore conclude that there is insufficient evidence to establish either of these means of disproving self-defense.

of self-defense should not consider the mental state of a reasonable person who has suffered repeated previous beatings at the hands of the victim.").

Further, in determining the reasonableness of a defendant's belief, we must also take into account any changes in her husband's behavior towards her immediately before the killing.  In one case, for example, this Court regarded a change in the victim's behavior immediately before he was stabbed as a significant factor in establishing the reasonableness of the defendant's fear of death or serious injury:

> The trial court concluded that appellant's belief was unreasonable because appellant had seen the decedent in a drunken and abusive state on numerous previous occasions, and that on those previous occasions the decedent had never become physically violent towards her.  We believe that these prior instances enhance, rather than diminish, appellant's claim.  On several prior occasions, according to the trial court, appellant had witnessed the decedent become verbally abusive when drunk.  Never before had the decedent become physically abusive when drunk, however.  On the night of his death, the decedent became physically violent, and directed that physical violence toward various objects within appellant's apartment and within close proximity to her.  This change in the decedent's behavior gave appellant reason to believe that the violence which decedent had been directing toward the various objects within the room was about to be directed at her.  That belief was reasonable under the circumstances.

*Commonwealth v. Eberle*, 474 Pa. 548, 555–56, 379 A.2d 90, 95 (1977).  *See also* Comment, 6 Pepperdine L.Rev. 213, 223 (1978) (A defendant should be able to show the reasonableness of her belief that she may be killed or seriously injured "based on the apprehension of an imminent danger caused by her husband's otherwise trivial or seemingly innocuous conduct.").

474

■ In this case, the Commonwealth elicited testimony from appellant that, although her husband had hit her in the past, he had never threatened her with a baseball bat or grabbed and choked her before; that appellant had never been afraid of her husband when they had fought in the past; and that never before had the decedent had that "desperate look" in his eyes which was present on the night of the shooting. The fact that Mr. Black possessed no weapon at the time of the shooting did not render appellant's belief that she was in danger any less reasonable, since it is beyond question that manual strangulation can result in serious bodily injury, if not death.

■ In view of appellant's history of abuse at the hands of her husband, along with his increased determination and use of force against her immediately prior to the shooting, and in view of the testimony of the Commonwealth's own witness, Mr. Quarles, that appellant shot her husband only after he had placed his hands around her neck, we conclude that appellant's belief that she was in imminent danger of serious bodily injury or death when she shot her husband was reasonable, and that the Commonwealth failed to introduce sufficient evidence to negate appellant's claim of self-defense on this ground. Appellant's conviction for voluntary manslaughter must therefore be reversed.

■ Appellant also contends that there is insufficient evidence to support her conviction for possession of a concealed weapon. 18 Pa.C.S.A. § 907(b) [4] provides:

Possession of weapon.—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

This Court has held that "[t]he Commonwealth must prove every element of the offense, including criminal intent,

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1.

beyond a reasonable doubt. ... Although criminal intent can be inferred beyond a reasonable doubt from the surrounding circumstances, it cannot be inferred from mere possession." *Commonwealth v. Moore*, 476 Pa. 19, 21, 381 A.2d 845 (1978) (citation omitted). In this case, criminal intent cannot be inferred from the circumstances surrounding appellant's possession of the gun which killed her husband because appellant, having acted in self-defense, never used that gun to commit a crime.[5]

The judgments of sentence are reversed and appellant is discharged.

ROBERTS, J., filed a concurring opinion in which FLAHERTY, J., joined.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, concurring.

I concur in the result. At sentencing, the court which heard the evidence and imposed a verdict of guilty described this as "a borderline case." This characterization convinces me that the Commonwealth has failed to carry its burden of proof beyond a reasonable doubt. See *Commonwealth v. Oglesby*, 438 Pa. 91, 94, 263 A.2d 419, 420 (1970) (factfinder stated "I could have decided it, perhaps, either way"); see generally, Levin & Cohen, The Exclusionary Rules in Nonjury Criminal Cases, 119 U.Pa.L.Rev. 905 (1971). Appellant, therefore, must be discharged.

FLAHERTY, J., joins in this concurring opinion.

5. The record dispels any suggestion that appellant actually intended to use the gun she carried in her pocketbook for the commission of a crime. At trial, appellant testified on cross-examination that she had found the loaded gun in a lot adjacent to her home and that she carried it with her so that her children would not find it in the house.