J-S25015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEMETRIUS WHITE, | |
| Appellant | No. 1186 EDA 2016 |

Appeal from the Judgment of Sentence Entered April 7, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003653-2015

BEFORE:  BENDER, P.J.E., RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 12, 2017**

Appellant, Demetrius White, appeals from the judgment of sentence of an aggregate term of three (3) years' probation, imposed after he was convicted of one count each of attempted criminal trespass (18 Pa.C.S. §§ 901; 3503(a)(ii)), and possessing an instrument of crime (18 Pa.C.S. § 907) ("PIC").  Appellant challenges the sufficiency of the evidence to sustain his convictions and alleges the verdict is against the weight of the evidence. After careful review, we reverse.

Appellant's convictions stem from an incident on March 23, 2015, where two officers observed Appellant standing on a cinder block wall, attempting to bash through a small boarded-up window with a crowbar, at the rear of the property located at 1918 South 19th Street in Philadelphia, Pennsylvania ("Property").  Appellant was arrested and ultimately found

guilty of the above-stated offenses, following a non-jury trial on February 4, 2016. On April 7, 2016, Appellant was sentenced to three (3) years' probation. He filed a timely notice of appeal on April 13, 2016.

Appellant now presents the following issues for our review:

I.    Was the evidence presented insufficient as a matter of law to sustain a conviction for attempted criminal trespass, 18 Pa.C.S. §§ 901, 3503(a)(ii), because the evidence failed to prove that [A]ppellant had no legal right to enter the property nor the *mens rea* necessary to commit the offense?

II.   Was the evidence presented insufficient as a matter of law to sustain a [PIC conviction], 18 Pa.C.S. § 907[,] because a crow bar used to legally enter a property is within its appropriate use[?]

III.  Was the verdict against the weight of the evidence because [Appellant's] father retained partial ownership in the property, which was conceded by the complainant, she was not the legal owner, no documentation established her ownership or control, and [A]ppellant's father testified that he asked [A]ppellant to enter the home?

Appellant's Brief at 3.

To begin, we note our standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth*

- 2 -

***v. Diamond***, 83 A.3d 119, 126 (Pa. 2013).  A successful sufficiency of the evidence challenge warrants discharge.  ***Commonwealth v. Brown***, 52 A.3d 320, 323 (Pa. Super. 2012).

With these principles in mind, we turn to Appellant's challenge to the sufficiency of the evidence supporting his convictions in the instant case. Criminal trespass is defined by the Crimes Code as follows:

§ 3503. Criminal trespass

**(a)  Buildings and occupied structures.—**

    (1)    A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

        (i)    Enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

        (ii)    Breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 Pa.C.S. § 3503(a)(1).  Thus, "[e]xamining the elements of criminal trespass, a conviction for that offense requires a person: (1) to break or enter into with subterfuge any building or occupied structure; (2) *knowing he is not licensed or privileged to do so*."  ***Commonwealth v. Quintua***, 56 A.3d 399, 402 (Pa. Super. 2012) (emphasis added).  Pursuant to Section 901 of the Crimes Code, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."  18 Pa.C.S. § 901(a).

Notably, "[c]riminal trespass contains an element of knowledge—a person committing that offense must know he is not privileged to enter the premises." *Id.* In fact, this Court has previously concluded that "if the actor reasonably believed that the owner of the premises or other person empowered to license access thereto, would have licensed him to enter or remain in the building[,] the [appellant] is not guilty of any degree of the offense of criminal trespass." *Commonwealth v. Goldsborough*, 426 A.2d 126, 127 (Pa. Super. 1981) (citing 18 Pa.C.S. § 3503(c)(3) (providing an actor's reasonable belief that he is licensed by the owner to enter or remain on the premises as an enumerated defense to prosecution of criminal trespass)).

Here, Appellant challenges the sufficiency of evidence regarding his legal right to be on the Property and his *mens rea* to commit criminal trespass. Appellant asserts that his father is part-owner of the Property and that he was attempting to enter the vacant Property with his father's permission. Appellant's Brief at 12. "[The] element of intent, like every other element of the crime, must be proven beyond a reasonable doubt if the conviction is to survive a challenge to the sufficiency of the evidence." *Commonwealth v. Namack*, 663 A.2d 191, 194 (Pa. Super. 1995).[1] Thus, we focus on the evidence from which Appellant's *mens rea* could be inferred.

_____

[1] In *Namack*, the appellant was charged with defiant trespass under 18 Pa.C.S. § 3503(b)(1), which includes an element of intent or *mens rea*,
*(Footnote Continued Next Page)*

The evidence produced at trial established that Appellant's father, Kenneth White, was one of seven children born to Dolores White.  Kenneth's sister, Sherilyn White, previously owned and lived in the Property. However, Sherilyn passed away approximately 30 years ago, shortly after giving birth to her son.  N.T. Trial, 2/4/16, at 33-34.  Although Sherilyn still remains listed as the owner on the tax records, *id.* at. 19-20, Kenneth testified that upon her death, Sherilyn left the Property to their mother, Dolores, and that Dolores "took over the house and paid the mortgage for 25 years."  *Id.* at 33-34.  For a number of years, Kenneth and Appellant lived in the Property with Dolores and helped care for her.  *Id.* at 27.  They were no longer living there, however, when Dolores passed away in December of 2012.  *Id.* at 22, 34.

Kenneth testified that he wanted to move back into the Property after his mother died, because he and Appellant were living in a horrible, drug-infested area in North Philadelphia, and he was the only sibling who did not own a home.  *Id.* at 34.  Kenneth expressed his desire to his sister, Yolanda Kirk, but she said "no," claiming that the Property was "unlivable."  *Id.* at 34.  Yolanda never lived in the Property, but claimed that since Dolores

_(Footnote Continued)_ ⸻

similar to the crime of criminal trespass under Section 3503(a)(1).  **See id.** (citing **Commonwealth v. Carter**, 393 A.2d 660 (Pa. 1978) (holding that parallel language in 18 Pa.C.S. § 3503(a), defining crime of criminal trespass, includes an element of scienter)).

passed away, she has been "the person in charge of running the property." *Id.* at 22. Although she referred to the Property as her "mother's property," during her testimony, Yolanda claimed that Sherilyn did not leave the Property to their mother but, rather, left the Property to her son[2] when she died, "with [Dolores] sort of managing the estate, and giving [Dolores] the opportunity to sell the [P]roperty...." *Id.* at 28.[3]

Yolanda now wants to sell the Property and agreed that all of her remaining siblings, including Appellant's father, would have an ownership interest in the proceeds from the sale. *Id.* at 27, 29. Yolanda further stated that she did not give Appellant permission to enter the Property. *Id.* at 23. However, Kenneth testified that after Yolanda told him that he could not move into the Property because of its poor condition, he instructed Appellant to "go and check it out." *Id.* at 36. Both Kenneth and Appellant at one time had keys to the Property, but their keys no longer worked because Yolanda changed the locks. *Id.*

On the date of the incident in question, Officer Raymond Rutter and his partner, Officer Gallen, responded to a call at approximately 1:05 p.m. Officer Rutter testified that when they arrived at the Property, two other

---

[2] Yolanda and her husband became guardians to Sherilyn's son after Sherilyn's death. *Id.* at 28.

[3] Yolanda made reference to "paperwork," generally, and her mother's will; however, no such documentation was produced as evidence at trial. *Id.* at 28.

uniformed officers were on foot in the front of the Property, so they went around to the back. *Id.* at 7-8. There was a four-to-five foot cinder block wall between the Property and the adjacent home. Officer Rutter described that when they arrived at the back of the Property, they observed Appellant standing on the cinder block wall, leaning over with a crow bar in his hand. *Id.* at 10. "[T]here was an opening, which looked like there once was a window, a small window, and around that was plywood.... [Appellant] was using the end [of the crowbar] to bash in through the wood because it was all splintered and everything like that." *Id.* The officers laughed as they stood there watching Appellant "hacking away" at the plywood for a few moments, and then pulled their guns and whistled. *Id.* at 13-14. Appellant stopped, turned around and looked surprised. *Id.* at 14. The officers told Appellant to drop the crow bar and handcuffed him. Appellant proclaimed, "What, I didn't get in yet[,]" *id.* at 15, and then proceeded to explain to the officers that the Property was his grandmother's house. *Id.* at 18.

The evidence presented at trial regarding ownership of the Property was confusing, at best. However, despite the question regarding who rightfully owns the Property, for the purpose of determining whether Appellant had the *mens rea* to commit criminal trespass, the relevant factor here is whether Appellant reasonably believed that his father had an ownership interest in the Property. The Property is clearly the subject of a family dispute. The Commonwealth failed to provide a copy of a will or any other documentation to establish ownership, nor did it produce any evidence

- 7 -

to refute Kenneth's testimony that he gave permission to Appellant to enter the Property. Given the surrounding circumstances and viewing the evidence in the light most favorable to the Commonwealth, we are convinced that the evidence established that Appellant reasonably believed his father had a partial ownership interest in the Property and that he had his father's permission to enter the Property. Accordingly, we are compelled to conclude that the evidence presented at trial was insufficient to establish that Appellant had the requisite *mens rea* to sustain a conviction of criminal trespass.

Next, Appellant argues that the evidence was insufficient to support his PIC conviction. More specifically, Appellant asserts he only used the crow bar for the lawful purpose of pulling down a board on his family's unoccupied Property so he could look inside. Appellant's Brief at 19. The Crimes Code defines the relevant offense, as follows: "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a).[4] Accordingly, to

---

[4] An "instrument of crime" is defined by the Crimes Code as follows:

(1) Anything specially made or specially adapted for criminal use.

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S. § 907(d).

sustain a PIC conviction, the Commonwealth must prove two elements: (1) possession of an instrument of crime; and (2) intent to use the instrument of crime criminally.

"The Commonwealth must prove every element of the offense, *including criminal intent*, beyond a reasonable doubt…. Although criminal intent can be inferred beyond a reasonable doubt from the surrounding circumstances, it cannot be inferred from mere possession." **Commonwealth v. Watson**, 431 A.2d 949, 953 (Pa. 1981) (emphasis added) (quoting **Commonwealth v. Moore**, 381 A.2d 845, 845 (Pa. 1978)); **See also Commonwealth v. Hall**, 450 A.2d 1018, 1020 (Pa. Super. 1982) (holding that even where the appellant conceded that a steak knife is an "instrument of crime," mere possession of the knife was not enough to show that the appellant intended to use it criminally).

Moreover, it has been established that "where an appellant has been acquitted of the underlying crime, and no other evidence has been presented to establish criminal intent, an appellant cannot be deemed to possess the requisite intent to employ [an instrument] criminally - a prerequisite to a conviction for PIC." **Commonwealth v. Weston**, 749 A.2d 458, 461 (Pa. 2000). Thus, based on our foregoing conclusion that Appellant lacked the *mens rea* to commit criminal trespass and that he reasonably believed he had permission from a rightful owner to enter the Property, we are constrained to conclude that there was no criminal intent in the instant case

with regarding to Appellant's use of the crow bar. Accordingly, we deem the evidence insufficient to uphold Appellant's PIC conviction.

Finally, the foregoing discussion renders Appellant's challenge to the weight of the evidence moot. Thus, we need not address the merits of this issue.

In sum, the Commonwealth failed to satisfy its burden of proof to support Appellant's convictions of criminal trespass and possessing an instrument of crime. Accordingly, we reverse the April 7, 2016 judgment of sentence, and we order Appellant discharged.

Judgment of sentence reversed. Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/12/2017