J-A07037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
COREY BURNS   :
  :
Appellant   :   No. 1410 EDA 2022

Appeal from the Judgment of Sentence Entered May 18, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002222-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED APRIL 11, 2023**

Corey Burns (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his non-jury conviction of aggravated assault[1] and related charges for the stabbing of Jabril Lassiter (Victim). On appeal, Appellant challenges both the sufficiency and weight of the evidence supporting his convictions, in particular, the court's determination that the evidence disproved his claim of self-defense. For the reasons below, we affirm.

On February 24, 2020, Appellant stabbed Victim during a fight. He was arrested and charged with aggravated assault, simple assault, possession of an instrument of crime (PIC), terroristic threats, recklessly endangering

_____

[1] 18 Pa.C.S. § 2702(a)(1).

another person, and attempted murder.[2]  The case proceeded to a non-jury

trial conducted on January 24, 2022.  The trial court summarized the

testimony presented as follows:

> [Victim] testified at trial that he resides at his grandmother's home on the 2100 block of North Newkirk Street, in the city and county of Philadelphia, Pennsylvania.  Appellant lives across the street, and [Victim] has known him over ten years.  Throughout the day of February 24, 2020, Appellant had an ongoing dispute with [Victim], his siblings, and cousins.  Around 8:00 p.m., while [Victim] was "at a friend's house" around the corner from his grandmother's residence, his sister called to advise him of a "big altercation" then occurring at the home.  [Victim] returned to the area and saw a lot of people outside — including his sisters and cousins — "yelling" and "arguing" with Appellant and his wife who were inside their own home.  After [Victim] arrived, Appellant yelled from his home window:  "Get your family."  When [Victim] replied "No," Appellant said:  "Okay, I'll be right back."  Appellant then exited his home and entered his vehicle that was parked on North Newkirk Street, which is a one-way street.

> [Victim] testified that the verbal confrontation with Appellant made him uncomfortable at his grandmother's home because "[t]here was too much going on" and he "just wanted to leave."  One of [Victim's] sisters therefore agreed to drive him elsewhere for the night.  After Appellant had already entered his vehicle, [Victim] proceeded to walk toward his sister's vehicle that was parked nearby.  However, as [Victim] passed Appellant's car, Appellant opened his driver's side door, striking [Victim's] arm.  [Victim] responded by punching Appellant, who remained inside his vehicle.  [Victim] testified that the two men then exchanged more punches before Appellant ultimately stabbed him:

>> So once I threw a punch, he threw a punch, and now it's to the point where we exchanging blows.  And I'm not thinking nothing of it.  All of a sudden, I hear my cousin yell, 'He go[t] a knife, he got a knife,' which made me instantly just jump back and made me want to check myself.  I

---

[2] **See** 18 Pa.C.S. §§ 2701(a), 907(a), 2706(a)(1), 2705, 901, and 2502, respectively.

started checking myself. I had a big gash in my hoodie. I took my hoodie off, my shirt, my undershirt, and that's when all the blood started coming out. I started to panic. I started getting weaker and weaker by the second.

. . .

I was feeling weak. I was feeling like I was about to faint. It was more of like a panic than anything because I seen, like, how much blood I was losing. And my - as the situation happened, cops are coming down the street already. So my cousin yelled to them, 'My cousin is stabbed, my cousin is stabbed. He need[s] attention.' So they basically - like, I was losing too much blood so they put me in the car and they drove me to the hospital themselves.

[Victim's] cousin, Tequoia Baxter ("Ms. Baxter"), witnessed the altercation and testified that before the stabbing Appellant had quarreled with her and her relatives throughout the day. According to Ms. Baxter, Appellant repeatedly threatened to kill her, [Victim], and other family members:

. . . He was saying, `I'm going to fuck y'all up. I'll kill y'all. I'm going to beat you the fuck up. [Victim], I'm going to fuck you up. Quoia, you don't want it with my girl,' which is me. I'm Quoia. `Y'all scared. Y'all don't want it over there. I'll fuck everybody up in that house. I'm going to kill y'all.' That's mostly it.

Ms. Baxter further testified that Appellant emerged from his home around 8:00 p.m., and that while entering his vehicle, he again threatened to kill [Victim] when he "catch[es]" him.[3] When [Victim] subsequently walked past Appellant's vehicle, whose driver's side door was partially open, the two men immediately commenced fighting. The fight lasted "about a minute or two," and when Ms. Baxter attempted to pull [Victim] away from the vehicle, she saw Appellant reach for a shiny object. [Victim] then "started checking [himself]" and discovered he was bleeding profusely. Police officers soon arrived and transported [Victim] and Ms. Baxter to the hospital.

_____

[3] Specifically, Ms. Baxter testified that as Appellant was getting into his car, he said "Brill, [referring to Victim,] when I catch you, I'm going to fuck you up. I'm going to kill you when I catch you[.]" N.T., 1/24/22, at 33.

- 3 -

[During Ms. Baxter's cross-examination, Appellant played body cam footage from an officer at the scene that included a statement by Ms. Baxter's sister, Tecairra. The only questions Appellant asked Ms. Baxter regarding this recording was in relation to where Teciarra was located at the time of the incident.]

The parties stipulated that [Victim] was admitted to Temple University Hospital with a stab wound to the left chest. He was provided two units of blood and "underwent needle decompression of the left chest followed by placement of a tube in the left chest." [Victim] subsequently underwent thoracic surgery on March 3, 2020, and he was discharged on March 6, 2020.

Philadelphia Police Officer Cody McGovern testified that he responded to the altercation scene and observed "multiple people screaming and yelling" that Appellant "has a knife." Officer McGovern approached Appellant's vehicle and saw the knife in his hand. "After being asked multiple times," Appellant "eventually dropped the knife" and Officer McGovern recovered the weapon, which was a pocket-knife with a 4-inch handle and a 3-and-a-half-inch blade.

In his defense, Appellant presented the testimony of Philadelphia Police Officer Andres Ortega, who testified that he arrived at the scene after Appellant had already been arrested. Officer Ortega searched for witnesses and spoke to a male parked in a white van on the 2100 block of North Newkirk Street. This individual identified himself as Craig Thompson and Officer Ortega recorded their conversation on body cam[, which was played at trial]. Mr. Thompson advised Officer Ortega that he witnessed [Victim] open the car door and start punching Appellant, who defended himself and stabbed [Victim].

Trial Ct. Op., 7/14/22, at 2-4 (record citations & footnotes omitted). Appellant did not testify at trial.

In closing arguments, Appellant's counsel maintained that Appellant acted in self-defense. The trial court held the matter under advisement and directed the parties to file post-trial briefs concerning the issue of self-defense. Both Appellant and the Commonwealth filed briefs on February 11, 2022.

- 4 -

Thereafter, on February 15, 2022, the trial court entered a verdict of guilty on all charges, except attempted murder. On April 13, 2022, Appellant filed a pre-sentence motion for a new trial, contending the verdict was against the weight of the evidence. *See* Appellant's Pre-Sentence Motion for a New Trial Because the Verdict was Against the Weight of the Evidence, 4/13/22, at 1-9 (unpaginated). The court convened a hearing on April 27, 2022, but ultimately denied Appellant's motion on May 18, 2022. That same day, the trial court sentenced Appellant to two concurrent terms of two to four years' imprisonment for PIC and terroristic threats, to be served concurrently with a term of six years' probation for aggravated assault. This timely appeal follows.[4]

Appellant presents the following two claims for our review:

1. Was not the evidence insufficient as a matter of law to convict Appellant of aggravated assault, simple assault, [REAP], and [PIC], where [Victim] repeatedly punched Appellant, who was sitting inside his car, and the Commonwealth failed to disprove self-defense beyond a reasonable doubt?

2. Did not the trial court err and abuse [its] discretion by denying Appellant's pre-sentence motion for a new trial because the verdict was contrary to the weight of the evidence, where the trial court considered evidence of little weight regarding provocation?

---

[4] Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant's Brief at 3.[5]

In his first issue, Appellant insists the evidence presented by the Commonwealth was insufficient to disprove beyond a reasonable doubt that he acted in self-defense when he stabbed Victim.

Our review of a challenge to the sufficiency of the evidence is well-settled:

> In determining whether there was sufficient evidence to support a [verdict], we are "obliged to determine whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to satisfy all elements of the offense beyond a reasonable doubt."

***Commonwealth v. Houser***, 18 A.3d 1128, 1133 (Pa. 2011) (citation omitted). While Appellant does not contest the fact that the evidence was sufficient to establish the offense of aggravated assault,[6] he nevertheless insists that the evidence also proved he acted in self-defense.

In considering a self-defense claim, we must bear in mind:

> When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense

---

[5] In his Rule 1925(b) statement, Appellant presented a third issue, challenging the sufficiency of the evidence supporting his conviction of terroristic threats. ***See*** Appellant's Statement of Errors Complained of on Appeal, 6/13/22, at 2 (unpaginated). However, he has abandoned that issue on appeal.

[6] ***See*** 18 Pa.C.S. § 2702(a)(1) ("A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]").

beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (citations omitted). Here, we agree with Appellant that the issue of self-defense was properly before the trial court, as fact-finder, based on Victim's testimony that he punched Appellant, who, at the time, was sitting in his own car. *See* N.T., 1/24/22, at 13. Nevertheless, the question that remains is whether the trial court properly determined the Commonwealth disproved Appellant's claim of self-defense beyond a reasonable doubt.

Section 505(a) of the Crimes Code provides that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Section 505(b)(2), however, restricts the use of "deadly force:"

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(b)(2)(i)-(ii).

Therefore, the Commonwealth sustains its burden of disproving self-defense if it establishes, beyond a reasonable doubt, at least one of the following:

> 1) the accused did not **reasonably believe** that he was in danger of death or serious bodily injury; or 2) the accused **provoked or continued** the use of force; or 3) the accused had a **duty to retreat** and the retreat was possible with complete safety.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted & emphases added). Moreover:

> The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. The Commonwealth can negate a self-defense claim if it proves the defendant **did not reasonably believe he was in imminent danger** of death or great bodily injury and it was necessary to use deadly force to save himself from that danger.
>
> > The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.
>
> [T]he use of deadly force itself "cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant] acting in responsive self-defense. [T]his would be an incomplete and inaccurate view of the circumstances for self-defense purposes." To claim self-defense, the defendant **must be free from fault in provoking or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant "**used more force than**

> **reasonably necessary** to protect against death or serious bodily injury."

*Id.* at 787-88 (citations omitted) (some emphasis in original & some emphasis added).

We note, too, that Section 505(b)(2.1) codifies the "castle doctrine," which creates a presumption that a victim's forceful entry into a defendant's home **or vehicle** provides the defendant with the requisite reasonable belief that a response with deadly force is necessary:

> (2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:
>
> (i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.
>
> (ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S. § 505(b)(2.1)(i)-(ii). However, as our Supreme Court has explained, "Section 505(b)(2.1) does not . . . broaden the rights of the accused when asserting a castle doctrine defense[, but i]nstead, provides an evidentiary mechanism to aid in the factfinder's evaluation of the merits of a castle doctrine defense." ***Commonwealth v. Childs***, 142 A.3d 823, 831-32 (Pa. 2016). With this background in mind, we consider Appellant's arguments on appeal.

Appellant first maintains that he possessed a reasonable "objective and subjective belief that he needed to use deadly force to stop [Victim] from punching him after [Victim] attacked him inside his own car[.]" Appellant's Brief at 20. Appellant emphasizes that Victim admitted "to opening [Appellant's] car door and beginning the attack." *Id.* at 21.[7] Further, he insists he was entitled to a presumption that his use of deadly force was necessary pursuant to 18 Pa.C.S. § 505(b)(2.1) because Victim "had unlawfully entered and was present within [Appellant's] vehicle[.]" Appellant's Brief at 24. He argues:

> His only choices were to let himself get punched repeatedly, try to drive the car (which would also risk serious bodily injury, not only to himself and [Victim], but to the crowd on the street), or to use the knife to defend himself.

*Id.* at 21.

Next, Appellant claims the Commonwealth failed to prove that he provoked or prolonged the encounter that led to the stabbing. *See* Appellant's Brief at 25. He emphasizes that he need not be completely "free from blame" to claim self-defense. *See id.* at 26. Rather, Section 505(b)(2)(i) provides that provocation defeats self-defense only when "the provoking acts are made with 'the **intent** of causing death or serious bodily injury.'" *Id.*, *citing* 18 Pa.C.S. § 505(b)(2)(i) (emphasis in original). Here, he insists that his act of

---

[7] We note that while Victim did testify he "opened" Appellant's car door and "threw a punch," he stated he did so only after Appellant "opened" the door first, and "hit [him] with it." N.T., 1/24/22, at 13.

opening his car door and bumping Victim's arm was not sufficient provocation to defeat his claim of self-defense under the statute. *See* Appellant's Brief at 26-27. Nor, he asserts, did his purported "threatening statements to [Victim] and his family . . . made prior to the encounter in the car . . . provoke the attack." *Id.* at 27.

Third, Appellant contends the Commonwealth failed to prove he had an "avenue to retreat . . . with complete safety." Appellant's Brief at 32. He emphasizes that he was "sitting in the driver's seat of his car, with [Victim] blocking his means of escape[,]" and that Victim "was fighting so aggressively that even being stabbed was not enough to get him to cease his attack." *Id.* Furthermore, he maintains that even if he had been able to get out of his car, he was "still amid a hostile, possibly violent crowd." *Id.* Thus, it was reasonable of him to believe he could not retreat in safety.

Here, the trial court concluded that Appellant's self-defense claims failed "for several reasons." Trial Ct. Op. at 8. The court opined:

> The testimony establishes that Appellant provoked or at least continued "the difficulty" that led to the stabbing. From inside his home, Appellant argued throughout the day with [Victim] and his family. [Victim's] cousin, Ms. Baxter, testified that Appellant repeatedly threatened to "beat" and "kill" [Victim] and his relatives. [Victim] testified that during the argument Appellant yelled at him to "[g]et your family." When [Victim] replied "no," Appellant said he would "be right back."
>
> . . . Appellant [then] exited his home and walked towards his vehicle, where he possessed a knife. Before entering his vehicle, Appellant again threatened to kill [Victim] when he "catch[es]" him. [Victim] testified that he thereafter walked past Appellant's vehicle, and that Appellant opened his driver's side door and struck [Victim] with the door. In response, [Victim] punched

- 11 -

Appellant and a fight ensued, during which Appellant stabbed the unarmed [Victim].

By verbally provoking and/or continuing the altercation — *i.e.*, threatening to kill [Victim] and his family, and striking [Victim] with his vehicle's door — Appellant forfeited his claim of self-defense.

The evidence similarly failed to establish that Appellant "entertained a reasonable belief that he was in danger of death or serious bodily injury and thus it was necessary to use deadly force" when he stabbed [Victim]. "The requirement of a reasonable belief encompasses two aspects, one subjective and one objective." "First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind."

As Appellant noted in his post-verdict motion, under 18 Pa.C.S. § 505(b)(2.1), a defendant is "presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death [or] serious bodily injury" when ( 1) "[t]he person against whom force is used is in the process of unlawfully and forcefully entering . . . [an] occupied vehicle . . . ," and (2) "[t]he actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred."

\* \* \*

Here, the Commonwealth's testimony regarding Appellant's conduct overcomes his "presumed" reasonable belief that deadly force was immediately necessary to protect himself against death or serious bodily injury. The testimony established that Appellant was at least partially or equally responsible for provoking the fight with the unarmed [Victim]. Ms. Baxter testified that Appellant repeatedly threatened to "beat" and "kill" [Victim] and his relatives, and [Victim] testified that during the argument Appellant had yelled at him to "[g]et your family." When [Victim] replied "no," Appellant said he would "be right back." Appellant then exited his home, walked towards his vehicle, and again threatened to kill [Victim] when he "catch[es]" him. [Victim] testified that when he thereafter walked past Appellant's vehicle to enter his sister's vehicle, Appellant opened his driver's side door and struck [Victim] with the door. A fight ensued with both men exchanging punches, but there is no testimony regarding who, if anyone, obtained an advantage in the struggle. Nevertheless,

- 12 -

Appellant at some point stabbed his unarmed opponent with a knife.

Aside from the evidentiary presumption that is belied by Appellant's own conduct, there is simply no other evidence supporting that Appellant believed that **he** was in "danger of death or serious bodily injury" from the unarmed person whom **he** just threatened to beat up and kill. While the evidence supports an assumption that Appellant anticipated and desired a physical altercation with [Victim], the testimony does not support that Appellant feared death or serious bodily injury from the anticipated confrontation. Moreover, Appellant could have avoided the physical altercation altogether, which he clearly must have anticipated under the circumstances, by staying inside his home and calling the police.

Lastly, "when the actor is confronted by non-deadly force," his "retaliation must not be excessive." The testimony here establishes that Appellant sought an altercation with [Victim], and that when the altercation occurred with only punches being exchanged, Appellant grabbed a knife and stabbed his unarmed foe. There was no evidence that [Victim], who fought with his fists, posed a **deadly** threat during the altercation.

Because Appellant did not establish that "his use of a knife was necessary to protect himself against serious bodily injury, and because even if [Appellant] retained the privilege of self-defense after the altercation began," his "use of force was excessive" and defeats his self-defense claim.

*Id.* at 8-12 (citations & footnotes omitted).

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we agree with the trial court's analysis. While Appellant focuses on the fact that he was "attacked . . . inside of his own car[,]" he neglects to appreciate the circumstances surrounding, and leading up to, the purported "attack." *See* Appellant's Brief at 20. As the court recounts, Appellant argued with Victim and his family throughout the day and repeatedly threatened to beat up or kill Victim and his family. *See* Trial Ct.

Op. at 8-9; N.T., 1/24/22, at 32-34. Moreover, immediately before Appellant left his home to go to his car, he yelled to Victim, "Get your family[,]" to which Victim replied, "No." N.T., 1/24/22, at 12. Appellant then stated, "Okay. I'll be right back." *Id.* Appellant left his home and went directly to his car. *See id.* As Victim walked by Appellant's car, Appellant hit Victim with the car door, and Victim responded by punching Appellant. *See id.* at 12-13. Appellant then returned the blows. As the trial court points out, "there is no testimony regarding who, if anyone, obtained an advantage in the struggle." Trial Ct. Op. at 11.

However, Ms. Baxter testified that during the ensuing fist fight, she witnessed Appellant "reaching toward the passenger side of his car" before he had a knife in his hand. *See* N.T., 1/24/22, at 35. Therefore, considering Appellant's prior threats, the trial court could have concluded that Appellant left his home specifically to retrieve the knife which he knew he had in his car. In any event, the circumstances precipitating Victim's first blow support the trial court's determination that Appellant "continu[ed] the altercation" — thus, "forfeit[ing] his claim of self-defense" — and that he did not possess an objectively reasonable belief that he was required to use **deadly force** to protect himself. *See* Trial Ct. Op. at 9, 11.

Appellant cites several cases in support of his assertion that "the use of deadly force against an unarmed complainant **can be** justified." *See* Appellant's Brief at 22-23 (emphasis added). However, none of those decisions compel a different result here.

Both ***Commonwealth v. Watson***, 431 A.2d 949 (Pa. 1981), and

***Commonwealth v. Helm***, 402 A.2d 500 (Pa. 1979), are domestic abuse

cases. In ***Watson***, there was evidence the victim (the defendant's husband)

"often hit" the defendant, and, on the night in question, knocked her to the

ground, threatened to kill her, and was on top of her strangling her when she

shot him. ***Watson***, 431 A.2d at 951-52. The Supreme Court reversed the

defendant's conviction of voluntary manslaughter, concluding:

> In view of [the defendant's] history of abuse at the hands of her husband, along with his increased determination and use of force against her immediately prior to the shooting, and in view of the testimony of the Commonwealth's own witness, . . . that [the defendant] shot her husband only after he had placed his hands around her neck, we conclude that [the defendant's] belief that she was in imminent danger of serious bodily injury or death when she shot her husband was reasonable, and that the Commonwealth failed to introduce sufficient evidence to negate [her] claim of self-defense on this ground.

***Id.***

Similarly, in ***Helm***, the Supreme Court reversed the defendant's

conviction of voluntary manslaughter, concluding that the Commonwealth

failed to disprove that the defendant reasonably believed she was in danger

of death or serious bodily injury when she stabbed the victim, her boyfriend,

in her own home. ***See Helm***, 402 A.2d at 504. The Court explained:

> The [u]ncontradicted evidence revealed that the stabbing occurred during an argument in which the victim pursued [the defendant] throughout the apartment, beat her, knocked her down several times, choked her, and repeatedly hit her head against the floor all of this at a time when [the defendant] was six months pregnant.

- 15 -

*Id.* The facts in *Watson* and *Helm* do not bear any resemblance to those presented herein.

Appellant also relies on *Commonwealth v. Eberle*, 379 A.2d 90 (Pa. 1977), which, while not a domestic abuse case, involved a drunken male attacking a female friend in her own home. Prior to the stabbing, the "exceedingly drunk" victim "tore" down bookshelves and screamed at defendant before "lung[ing]" at her, at which time she grabbed a knife and fatally stabbed him. *See id.* at 92. Unlike here, the defendant was alone in her one-room apartment when the victim became violent. *See id.* at 94. The Supreme Court concluded, *inter alia*, that the Commonwealth failed to disprove that the defendant reasonably believed she was in danger of death or serious bodily injury. *Id.* Here, prior to the stabbing, Appellant and Victim were involved in a mutual fist fight, following a day-long rift between the two families.

Lastly, Appellant relies upon *Commonwealth v. Schaller*, 426 A.2d 1090 (Pa. 1981). *See* Appellant's Brief at 22-23. However, the issue in *Schaller* was whether, *inter alia*, the trial court should have **charged the jury** on self-defense, when the defendant presented "some evidence of self-defense"[8] — not whether the evidence presented by the Commonwealth was sufficient to disprove self-defense. *See Schaller*, 426 A.2d at 1096. Thus, contrary to Appellant's characterization, the Supreme Court did **not** determine

---

[8] *See Schaller*, 426 A.2d at 1095-96.

that the defendant acted in self-defense when he shot an unarmed larger man moving towards him "reaching out with his hands raised." **See** Appellant's Brief at 22-23.

Notably, Appellant does not address the case cited by the trial court — **Commonwealth v. Jones**, 332 A.2d 464 (Pa. Super. 1974) — for the proposition that "when the actor is confronted by non-deadly force, his retaliation must not be excessive." **See** Trial Ct. Op. at 12 (some quotation marks omitted), *citing **Jones***, 332 A.2d at 466. In **Jones**, earlier on the day of the incident, the defendant had fought with his common law wife's son and nephew when he went to her home to pick up some belongings. **See Jones**, 332 A.2d at 465. Later that evening, the defendant's common law wife called him to warn him that her son, his cousin and two others were heading to his residence. **See id.** The defendant told her to call the police, which she did. **Id.**

Meanwhile, the defendant "armed himself with a kitchen knife, and left the premises to await the arrival of the carload of hostile youths." **Jones**, 332 A.2d at 465. After the youths threw some items at the house, the defendant left his porch to confront them. **Id.** One of the youths kicked the defendant. **Id.** The defendant struck the victim, who then pushed the defendant to the ground. **Id.** After the defendant "jumped" up, he used the knife to "slash[ ]" at the victim. **Id.** The defendant was convicted of aggravated assault and appealed arguing his "intent was vitiated by [his] showing of self-defense." **Id.**

A panel of this Court rejected Appellant's claim for several reasons:

[The defendant] knew that the police had been notified, so that any possible danger to his house would be abated immediately. Nonetheless, he left the security of his home to confront the youths. The force exerted against the youths by the [defendant], therefore, was not 'immediately necessary' to protect himself. Nor was his belief that force was necessary reasonable because he knew that the police were coming. There was already animosity between the [defendant] and the youths. Therefore, by coming onto the porch when the action was not reasonably necessary, [defendant] was 'continuing the difficulty' that resulted in the assault of [the victim]. Further, the force exercised on the [defendant] did not justify the use of deadly force. (Wielding a knife certainly amounts to the use of deadly force.) [The defendant] chose to engage in fisticuffs, but then drew his knife after he had been knocked down. . . .

*Jones*, 332 A.2d at 466.

The facts in *Jones* are similar to those presented herein. Appellant and Victim's family had been engaged in an argument for most of the day. Appellant was safely inside his own home, but chose to leave to go to his car after threatening Victim, and then struck Victim with his car door as Victim passed by — actions, which the trial court found, at the very least, "continu[ed] the altercation[.]" *See* Trial Ct. Op. at 9.

Appellant, however, insists that while he "may have engaged in bravado within the context of a neighborhood beef," he was forced to resort to the use of deadly force "when he was attacked inside his own vehicle and surrounded by a hostile crowd." Appellant's Brief at 25. The court rejected this characterization, finding there was no evidence supporting Appellant's purported belief "that **he** was in danger of death or serious bodily injury from

- 18 -

the unarmed person whom **he** just threatened to beat up and kill." ***Id.*** at 11 (quotation marks omitted). Moreover, the court also determined "[t]here was no evidence that [Victim], who fought with his fists, posed a **deadly** threat during the [ensuing] altercation." ***Id.*** at 12. Because we agree the evidence presented by the Commonwealth sufficiently disproved Appellant's claim that he "reasonably believed" he was in danger of death or serious bodily injury at the time of the attack, and Appellant responded with more force than necessary to defend himself, Appellant's sufficiency challenge warrants no relief. ***See Smith***, 97 A.3d at 787 ("The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence.").

In his second issue, Appellant challenges the weight of the evidence supporting his conviction. Our review of a weight claim is well-established:[9]

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A trial court may sustain a weight challenge only if the verdict is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. We defer to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

---

[9] We note that Appellant properly preserved this claim in a timely post-verdict motion filed prior to sentencing. ***See*** Pa.R.Crim.P. 607; Appellant's Pre-Sentence Motion for a New Trial Because the Verdict was Against the Weight of the Evidence, 4/13/22.

*Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa. Super. 2020) (citations & quotation marks omitted).

Here, Appellant argues "[i]t shocks the conscience to base the verdict on [Victim's] dubious description of getting bumped by Appellant's car door [as] provocation justifying [Victim's] attack." Appellant's Brief at 34-35. He emphasizes that the only witness who testified that Appellant opened his car door and bumped Victim was Victim himself. *See id.* at 35. Rather, Appellant maintains the "more accurate" and sensible sequence of events was supplied by Ms. Baxter's sister, Tecairra, who was recorded on body cam video providing the following sequence of events: Appellant called Victim "a bitch," at which time Victim walked up to the car and said, "What [did] you say?," before he opened the car door and "started swinging" at Appellant. *Id.* at 36. Appellant also insists his threats to Victim did not constitute sufficient provocation for the attack, considering that Victim's "family advanced the verbal back and forth as much as Appellant." *Id.* Indeed, Appellant emphasizes Officer McGovern's testimony that the scene was "chaotic" with "maybe 20 people outside screaming and yelling[.]" *Id.* at 37 (quotation marks omitted), *citing* N.T., 1/24/22, at 47.

In addressing Appellant's weight of the evidence claim, the trial court emphasized that it "considered the overall circumstances in which the altercation occurred[,]" which was "the culmination of an ongoing confrontation[.]" Trial Ct. Op. at 13 (citation & quotation marks omitted). The court further explained that: during the preceding argument Appellant

J-A07037-23

threatened to beat up and kill Victim and his family; he told Victim he would "be right back," after instructing Victim to "get his family" and Victim replied "no[;]" and Appellant walked straight to his vehicle while threatening Victim again. *See id.* at 13. While the court acknowledged there was "conflicting testimony" as to whether Appellant struck Victim with his car door, it concluded "the weight of the testimony (1) did **not** establish that Appellant's 'use of a knife was necessary to protect himself against serious bodily injury[;]' (2) but **did** establish that Appellant at least shared culpability in provoking the altercation, and this his use of force in stabbing his unarmed foe was excessive." *Id.* at 13-14. Appellant has failed to demonstrate the court's ruling constituted an abuse of discretion, and, therefore, his challenge to the weight of the evidence fails. *See Clemens*, 242 A.3d at 667.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2023

- 21 -